**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────

**No. 09-4299**

─────────

UNITED STATES OF AMERICA,

               Plaintiff - Appellee,

     v.

RASHAWN LAMAR OWENS,

               Defendant - Appellant.

─────────

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.   Terrence W. Boyle, District Judge.   (7:08-cr-00095-BO-1)

─────────

Submitted:  December 11, 2009      Decided:  January 4, 2010

─────────

Before NIEMEYER, DUNCAN, and AGEE, Circuit Judges.

─────────

Affirmed by unpublished per curiam opinion.

─────────

Thomas P. McNamara, Federal Public Defender, G. Alan DuBois, Assistant Federal Public Defender, James E. Todd, Jr., Research and Writing Attorney, Raleigh, North Carolina, for Appellant. George E. B. Holding, United States Attorney, Anne M. Hayes, Jennifer P. May-Parker, Assistant United States Attorneys, Raleigh, North Carolina, for Appellee.

─────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Rashawn Lamar Owens pled guilty to unlawful possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1) (2006), and was sentenced to a term of 110 months imprisonment. Owens appeals his sentence, contending that the district court erred in giving a four-level increase for use of a firearm in connection with another felony, U.S. Sentencing Guidelines Manual § 2K2.1(b)(6) (2008), and plainly erred in adopting the enhanced base offense level of 24 under USSG § 2K2.1(a)(2), based in part on Owens' prior North Carolina conviction for speeding to elude arrest. We affirm.

Owens was arrested after narcotics officers executed a search warrant at a hotel room in Jacksonville, North Carolina. Owens was not a suspect in the drug investigation, but when the officers entered the hotel room, Owens was seated in a chair with a 9mm pistol pointed at the officers. In the presentence report, the probation officer recommended a four-level increase for use of a firearm in connection with another felony, i.e., assault on the law enforcement officers by pointing the gun at them. At sentencing, Owens insisted that he did not commit an assault because he did not realize the officers were law enforcement officers and thought he was being robbed. One of the arresting officers testified at sentencing that they announced their presence and identity loudly and knocked before

2

opening the door, that they were wearing clothing that clearly identified them as law enforcement officers, and that Owens dropped the gun only after he was ordered to do so three times. The district court summarily overruled Owens' objection and applied the enhancement.

Whether a defendant has actually possessed a firearm in connection with another felony offense is a factual question. United States v. Garnett, 243 F.3d 824, 829 (4th Cir. 2001). Accordingly, the district court's decision to enhance Owens' offense level pursuant to § 2K2.1(b)(6) is reviewed for clear error. United States v. Osborne, 514 F.3d 377, 387 (4th Cir.), cert. denied, 128 S. Ct. 2525 (2008). Owens suggests that the district court wrongly assumed that pointing a firearm at a law enforcement officer is a felony under North Carolina law regardless of whether the defendant knew the law enforcement officer was in fact a law enforcement officer.[1] See State v. Avery, 337 S.E.2d 786, 803 (N.C. 1985) (holding that "knowledge is an essential element of the crime of assault with a firearm upon a law enforcement officer"). Owens bases his argument

---

[1] Under N.C. Gen. Stat. § 14-34.2 (LexisNexis 2007), an assault with a firearm on a law enforcement officer in the performance of his duties is a Class F felony. An assault by pointing a gun "at any person," is a Class A1 misdemeanor under N.C. Gen. Stat. § 14-34, and a simple assault is a Class 2 misdemeanor. N.C. Gen. Stat. § 14-33 (LexisNexis 2007).

primarily on the brevity of the district court's ruling, contending that the district court did not find that he knowingly pointed a gun at the officers. He also argues that the officer's testimony was insufficient to support the enhanced base offense level because it did not establish how long it took him to recognize that he was confronting law enforcement officers. However, we agree with the government's position that the only question before the district court at sentencing was whether Owens knew that he was pointing his gun at law enforcement officers. Therefore, the district court's denial of Owens' objection constituted a ruling that he pointed the gun with knowledge that the persons entering the hotel room were law enforcement officers.

Owens contends that we are precluded from reaching this conclusion, relying on United States v. Carter, 564 F.3d 325, 329 (4th Cir. 2009), in which we noted that "the Supreme Court's recent sentencing jurisprudence plainly precludes any presumption that, when imposing a sentence, the district court has silently adopted arguments presented by a party." However, in Carter, the issue was the district court's failure to provide a specific explanation for a below-guideline sentence. We held that the sentence was procedurally unreasonable because the record did not reveal the sentencing court's reasons for choosing the sentence it imposed. Id. at 330. By contrast, a

4

narrow issue was before the district court and the court's ruling was clearly a rejection of Owens' claim that he did not know he was pointing a gun at police. Although a more complete explanation would have been preferable, the court's ruling was adequate under the circumstances.

In addition, the officer's testimony was sufficient to establish by a preponderance of the evidence that Owens had time to recognize the men entering the room as police. See United States v. Jeffers, 570 F.3d 557, 570 (4th Cir. 2009) (stating standard of review). Here, the information before the district court was sufficient to support its finding by a preponderance of the evidence.

Owens did not challenge his base offense level of 24 in the district court and thus his challenge to it is reviewed for plain error. United States v. Hughes, 401 F.3d 540, 547 (4th Cir. 2005). Under the plain error test, United States v. Olano, 507 U.S. 725, 732-37 (1993), a defendant must show that (1) error occurred; (2) the error was plain; and (3) the error affected his substantial rights. Id. at 732. Even when these conditions are satisfied, this court may exercise its discretion to notice the error only if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Id. (internal quotation marks omitted).

A base offense level of 24 is applied under § 2K2.1(a)(2) if the defendant committed the instant offense after being convicted of two felony offenses that are either a crime of violence or a controlled substance offense. A "crime of violence," as used here, see § 2K2.1 cmt. n.1, is defined in USSG § 4B1.2(a) as –

> [A]ny offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –
>
> (1) has as an element the use attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

Owens claims that the district court erred in accepting the probation officer's calculation of the base offense level at 24, based in part on his prior North Carolina felony conviction for eluding arrest with a motor vehicle with three aggravating factors, in light of Begay v. United States, 128 S. Ct. 1581, 1585 (2008) (holding that a crime of violence under the "otherwise" clause in 18 U.S.C. § 924(e) (2006), which mirrors the language in § 4B1.2(a)(2), must be "roughly similar, in kind as well as in degree of risk posed," to the enumerated crimes), and United States v. Roseboro, 551 F.3d 226 (4th Cir. 2009) (holding that test applied in United States v. James, 337 F.3d 387, 390-91 (4th Cir. 2003), is no longer good law;

6

applying Begay). He also relies on Chambers v. United States, 129 S. Ct. 687 (2009) (holding that the crime of failing to report for confinement is not a "violent felony" under the Armed Career Criminal Act, 18 U.S.C. § 924(e)).

In Roseboro, we held that "the proper inquiry focuses on the similarity between the prior crime and the enumerated crimes in § 924(e)(2)(B)(ii), asking whether the prior crime involved purposeful, violent, and aggressive conduct, which would demonstrate a likelihood that the defendant would use a firearm during the commission of a crime." Roseboro, 551 F.3d at 234. We further held that "[t]he intentional act of disobeying a law enforcement officer by refusing to stop for his blue light signal, without justification, is inherently an aggressive and violent act." Id. at 240. Roseboro decided that a South Carolina conviction for failure to stop for a blue light was not categorically a "violent felony" under § 924(e) or a crime of violence under the guidelines because it did not require the government to prove that the defendant's failure to stop was intentional. Id. at 240-41. However, we noted in Roseboro that the North Carolina speeding to elude statute at issue in this case, N.C. Gen. Stat. § 20-141.5, is one that does "require that the failure to stop for a blue light be purposeful." Roseboro, 551 F.3d at 236, 239 & n.5. Thus, under Roseboro, the district court did not err, or plainly err, in

7

accepting the probation officer's recommendation to treat Owens'
prior felony speeding to elude conviction as a crime of violence
and applying the enhanced base offense level in § 2K2.1(a)(2).[2]

We therefore affirm the sentence imposed by the
district court. We dispense with oral argument because the
facts and legal contentions are adequately presented in the
materials before the court and argument would not aid the
decisional process.

AFFIRMED

---

[2] Owens maintains that Chambers v. United States, 129 S. Ct.
687 (2009), prohibits a sentencing court from assuming that a
prior offense involves conduct that presents serious potential
risk to others, given that the Supreme Court in Chambers relied
on statistical analysis rather than "assumptions about inherent
risks" to reach its decision. We are not persuaded that
Chambers requires a reexamination of this aspect of Roseboro.