**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-4412**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

STEVEN RUSSELL HELTON,

Defendant – Appellant.

Appeal from the United States District Court for the Southern District of West Virginia, at Beckley. Irene C. Berger, District Judge. (5:12-cr-00134-1)

Argued: December 11, 2014        Decided: April 2, 2015

Before WILKINSON, GREGORY, and DUNCAN, Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Gregory and Judge Duncan joined. Judge Gregory wrote a separate concurring opinion.

**ARGUED:** Jonathan D. Byrne, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant. Lisa Grimes Johnston, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee. **ON BRIEF:** Mary Lou Newberger, Federal Public Defender, David R. Bungard, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant. R. Booth Goodwin II, United States Attorney, William B. King, II, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee.

WILKINSON, Circuit Judge:

Appellant Steven Helton pled guilty to one count of knowing possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2). He was sentenced to 60 months in prison followed by a lifetime term of supervised release. Helton now appeals. The question presented to this court is whether, given the facts of this case, a lifetime term of supervised release is procedurally and substantively reasonable. For the following reasons, we think it is and now affirm.

I.

In October 2010, Sergeant D.C. Eldridge, a member of the West Virginia Internet Crimes Against Children Task Force, determined that a computer near Beckley, West Virginia, contained several child pornography videos accessed through peer-to-peer software that the Task Force was monitoring. Sergeant Eldridge, with assistance from the FBI, identified the subscriber to the IP address associated with the computer as Barbie Helton of Beaver, West Virginia. On December 29, 2010, investigators executed a search warrant on the Helton residence where Ms. Helton lived with her son, Steven. As part of this initial search, Sergeant Eldridge discovered several files containing child pornography on Steven Helton's computer.

Defendant, after being advised of his constitutional rights, gave a recorded statement to law enforcement, explaining

2

that he regularly viewed adult and child pornography and would download, view, and then delete images, and then return to download more images. Forensic investigators found a total of 961 individual images of child pornography on the hard drive of the computer, although only 42 were actively accessible for viewing at the time of the search. In the course of his interview, Helton admitted to downloading some of the images onto his iPod for personal use, but denied trading or sharing child pornography with any other users.

Many of the images found by investigators were of prepubescent minors engaged in sexual acts, exhibition of genitals, or bondage, and at least one depicted a child engaged in sadistic or masochistic acts. Helton explained that he had been sexually abused by his stepfather when he was a child, and that he had sought treatment in the past but had been unable to stop viewing child pornography. He also admitted that he had been caught viewing child pornography while he was a juvenile in foster care and that he had been removed from a foster family for sexually abusing a three-year old when he was thirteen years old.

On June 12, 2012, a federal grand jury in the Southern District of West Virginia issued a two-count indictment against Helton for knowing receipt and knowing possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2), (a)(5)(B),

and 2252A(b)(1)-(2). Helton pled guilty to one count of knowing possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2). The maximum term of imprisonment under the statute is ten years. See 18 U.S.C. §§ 2252A(a)(5)(B), 2252A(b)(2). Under 18 U.S.C. § 3583(k), the court must impose a term of supervised release of at least five years and up to life for crimes under § 2252A.

The presentence investigation report, prepared by the probation office, recommended a Guidelines range of 78 to 97 months of imprisonment based on a total offense level of 28 and a criminal history category of I. The district court adopted the presentence investigation report, after thoroughly reviewing it at the sentencing hearing. See J.A. 168-72. It noted the statutory maximum and walked the defendant through the Guidelines calculations. As the trial judge explained, a violation of § 2252A(a)(5)(B) has a Base Offense Level of 18. See id. at 170; see also U.S.S.G. § 2G2.2(a)(1). A two-level enhancement was added for using a computer to search for and access child pornography. In addition, two levels were added for material that depicts a prepubescent minor under the age of 12 and an additional four levels for material portraying sadistic or masochistic conduct. Lastly, a five-level enhancement was added because the offense involved 600 or more images. Helton received a three-level reduction for acceptance of

4

responsibility, bringing his total offense level to 28. Because this was his first conviction, his criminal history category, as noted, was I.

At the sentencing hearing, neither party objected to the Guidelines calculation included in the presentence report, although the defendant provided a comment by way of additional explanation that the majority of images were not sadistic or masochistic in nature. See J.A. 158-59. The sentencing judge noted objections from the defense regarding several of the more onerous conditions of supervised release and agreed to remove some of the more burdensome terms where not applicable to the nature and circumstances of Helton's offense. She also considered the factors listed in 18 U.S.C. § 3553(a) and heard argument from both the government and defense counsel regarding the appropriate sentence for Helton. See id. at 172-91. Helton also made a statement directly to the court. See id. at 198-99. At the conclusion of his statement, the court sentenced defendant to a term of 60 months imprisonment, a downward departure from the Guidelines range, and a lifetime term of supervised release, comprised of a number of conditions specific to the defendant, including treatment for both substance abuse and psychosexual mental health. This appeal followed.

II.

This court reviews a sentence imposed by a district court for reasonableness. See United States v. Booker, 543 U.S. 220, 261 (2005). Sentencing is the province of the district court and in reviewing the chosen sentence, we consider only whether the sentencing judge abused her discretion rather than whether this court would impose the same sentence on a defendant in the appellant's position. See Gall v. United States, 552 U.S. 38, 51 (2007). This court will affirm a sentence when it is "within the statutorily prescribed range and is reasonable." United States v. Hughes, 401 F.3d 540, 547 (4th Cir. 2005). Defendant contests only his term of supervised release, arguing that the lifetime term is procedurally and substantively unreasonable and should be vacated.

Even though the Sentencing Guidelines are now advisory, district courts "must consult those Guidelines and take them into account when sentencing." Booker, 543 U.S. at 264. A sentence within the Guidelines range is presumed on appeal to be substantively reasonable. See Rita v. United States, 551 U.S. 338, 347 (2007). Here, the lifetime term of supervised release was within both the Guidelines range and the statutory maximum. See 18 U.S.C. § 3583(k); U.S.S.G. § 5D1.2(b). However, that does not end the inquiry. For a sentence to be procedurally sound, a district judge must also consider the factors outlined in 18

6

U.S.C. § 3553(a) and "articulate the reasons for selecting the particular sentence, especially explaining why [any] sentence outside of the Sentencing Guideline range better serves the relevant sentencing purposes set forth in § 3553(a)." United States v. Green, 436 F.3d 449, 456 (4th Cir. 2006).

A.

Helton contends that his lifetime term of supervised release is procedurally unreasonable because the district court did not adequately explain why it chose that particular sentence. However, we find that the sentencing judge carefully and thoroughly explained the sentence at length.

The district court walked through the calculation of the Guidelines range carefully at the sentencing hearing, during which neither party objected. It noted that defense counsel had asked for the court to consider that the majority of images did not depict sadistic or masochistic conduct, even though counsel did not object to the four-level enhancement for such images. See J.A. 158. The court considered arguments made by both parties at sentencing concerning the § 3553(a) factors and discussed the application of the factors in fashioning Helton's particular sentence.

The district judge granted a downward departure from the recommended term of imprisonment of 78 to 97 months, sentencing Helton to 60 months in prison. See J.A. 199, 172. She explained

7

that the sentence of 60 months followed by a lifetime term of supervised release "provide[d] just punishment for the crime for which [Helton] pled guilty" because it both "reflect[ed] the seriousness of the offense" and would "deter [Helton] from committing criminal conduct in the future." Id. at 206. Importantly, the judge further explained that given Helton's age and lack of prior criminal convictions, a sentence of longer than 60 months "simply was not necessary," id., especially in light of "the fact that [he would] be required to be on supervised release for life," id. at 207-08. Although Helton's prison term is not directly at issue before this court, the judge made clear that the length of the prison term and the length of the supervised release term were linked. She was only comfortable with the downward departure for the term of imprisonment because she knew that Helton would be subject to a lengthy term of supervised release.

The judge also gave full and fair consideration to the § 3553(a) factors that, she explained, require the court to consider, among other factors, the "nature and circumstances of the offense," "the history and characteristics of the defendant," and the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," as well as "to

provide the defendant with needed . . . medical care, or other correctional treatment." 18 U.S.C. § 3553(a); see also J.A. 173.[*]

Although the court must base the sentence on an individualized assessment, it need not "robotically tick through" the § 3553(a) factors. United States v. Johnson, 445 F.3d 339, 345 (4th Cir. 2006). In crafting the sentence, the

---

[*] Defense counsel argued before this court that the district court's consideration of the § 3553(a) factors focused primarily on "the severity of [Helton's] conduct, which is explicitly off limits when it comes to consideration of the supervised released term." Oral Arg. at 13:35. We disagree with this characterization of the district court's explanation. It is true that 18 U.S.C. § 3583, which provides "factors to be considered in including a term of supervised release," 18 U.S.C. § 3583(c), does not include "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" or "the kinds of sentences available," 18 U.S.C. § 3553(a)(2)(A), (a)(3). Notably, however, the statute allows for consideration of the factors listed in § 3553(a)(1): "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1); see also 18 U.S.C. § 3583(c). Here, we do not agree that the district judge focused only on the severity of Helton's conduct. While she did state that she chose the 60 month sentence followed by a life term of supervised release to "provide[] just punishment for the crime for which [Helton] pled guilty" and to "reflect[] the seriousness of the offense," J.A. 206, she further noted that she had considered "the nature and circumstances of [Helton's] offense, as well as [his] history and characteristics." Id. She specifically outlined how, in determining the proper sentence and the conditions of supervised release, she had balanced his youth and lack of criminal history against his admitted cycle of downloading and deleting child pornography, the period of months over which he had collected the images, his mental health history, and his admitted history of viewing child pornography and his sexual abuse of a three-year old child in foster care. See id. at 207.

judge took note of both individual characteristics of the defendant and the particular offense conduct in this case. She considered that Helton was only "21 years old and appearing [before the court] on [his] first criminal conviction." J.A. 206. The court also considered Helton's extensive "mental health issues and [his] admissions to having viewed child pornography as a child" in determining "the need for this sentence to provide [Helton] with medical care and corrective treatment in the most effective manner." Id. at 207.

On the other hand, the judge explained that while "only 42 image files of child pornography were located in active folders," the defendant had "engaged in repetitive cycles of downloading images, deleting them, and then searching for more," over the course of seven months, which is exactly the "type of conduct [that] provides the market for child pornography which . . . often results in the abuse of minors." Id. at 206-07. She also took notice of his admission that he had "sexually abused a three-year-old" when he was previously in foster care. Id. at 207.

Furthermore, the judge took into account a number of individualized considerations in shaping the conditions that attach to defendant's term of supervised release. Considering the defendant's admission to significant alcohol and marijuana use, id. at 197, and noting that he did not have "a low risk of

10

future substance abuse," id. at 200, she required him to participate in a substance abuse treatment program. She also required Helton to "submit to a psychosexual evaluation by a qualified mental health professional," "complete [any resulting] treatment recommendations," and "take all medications as prescribed." Id. at 201. She also imposed a number of conditions regarding his status as a sex offender and limiting his ability to interact with minors. Id. at 201-04.

However, the district court also, in response to a request from defense counsel, removed several of the more onerous terms of supervised release, finding them unnecessarily harsh in light of the circumstances of the case. Id. at 165-68. The judge noted that the "terms and conditions of supervised release should have some reasonable basis given the facts and circumstances of the offense such that they accomplish the purposes that are intended by supervised release." Id. at 166. Finding that there was "no basis in this particular case," she declined to require "defendant to carte blanche afford access to his financial information" unless there "is some indication that there is something [such as a computer or cell phone with internet capacity] purchased that should not have been." Id.

She also declined to impose a condition preventing the defendant from purchasing cameras, explaining that there was "no evidence in this case that the defendant took pornographic

11

photos or videos of children." Id. at 167-68. Despite objection from defense counsel, she kept in place the condition preventing defendant from purchasing or owning a cell phone with internet capability, explaining that it was "appropriate given the facts and circumstances of this case." Id. at 167. Defense counsel repeatedly requested a fifteen year term of supervised release, but the judge rejected that in favor of a longer term coupled with a downward departure in the length of Helton's term of imprisonment. See id. at 176, 190, 208.

In light of this lengthy explanation, we find no procedural error in what the district court did. The Guidelines range was properly calculated. The term of supervised release was within the Guidelines range and within the permissible statutory authorization. The defendant received a downward departure in his prison term, which was clearly linked to a longer term of supervised release. The defendant wants additional explanation, specific to the term of supervised release, but we find the district court satisfactorily explained both pieces of the sentence at great length.

We do not dispute that there must be sufficient explanation for a sentence to be procedurally reasonable. But we take no issue with what the district court did here. We find the district court's thorough explanation sufficient on both the sentence as a whole and the term of supervised release

12

specifically. To require more explanation would unnecessarily intrude upon the district court's primary and unique role in the sentencing process.

B.

Helton also contends that his lifetime term of supervised release is substantively unreasonable because it is longer than necessary to further the goals of supervised release itself and was not justified by Helton's offense. See Appellant's Br. at 12. We disagree. A lifetime term of supervised release is authorized by statute and within the Sentencing Guidelines range. See 18 U.S.C. § 3583(k) ("[T]he authorized term of supervised release for any offense under section . . . 2252A . . . is any term of years not less than 5, or life."); see also U.S.S.G. § 5D1.2 ("[T]he length of the term of supervised release . . . may be up to life, if the offense is . . . a sex offense."). Furthermore, the U.S. Sentencing Commission specifically included an advisory policy statement in the Guidelines Manual that suggests it is the judgment of the Sentencing Commission that in the case of sex offenses "the statutory maximum term of supervised release is recommended."

District courts are permitted to consider a wide variety of information during the course of a sentencing proceeding. See Alleyne v. United States, 133 S. Ct. 2151, 2163 n.6 (2013) ("[J]udges may exercise sentencing discretion through 'an

13

inquiry broad in scope, largely unlimited either as to the kind of information [they] may consider, or the source from which it may come.'") (alteration in original) (quoting United States v. Tucker, 404 U.S. 443, 446 (1972)). Here, the district judge considered the defendant's lengthy history of viewing child pornography, his admitted repetitive pattern of downloading material, deleting it, and seeking out more. She also considered that he admitted to abusing a three-year old when he was a minor in foster care and that he had sought help for his compulsion to view child pornography but had been unable to stop.

Furthermore, the district court granted defendant a downward variance in his prison term, remarking that she was comfortable doing so because he would be subject to a lengthy term of supervised release. It would be almost unprecedented to credit a defendant's challenge to a sentence as substantively unreasonable when the district court actually reduced the term of imprisonment below the recommended Guidelines range. Moreover, the court modified the conditions of supervised release, alleviating some of the more burdensome requirements that she thought inappropriate for Helton given the offense and circumstances of this case and this defendant. Helton can still petition for a modification or termination of his term of supervised release at any time after one year of supervised release, provided it is justified by his conduct and in the

14

interest of justice. <u>See</u> 18 U.S.C. § 3583(e)(1); U.S.S.G. § 5D1.2 n.5. Given these circumstances, we cannot find the district court's conclusion unreasonable that a lifetime of supervised release was necessary to deter defendant, protect the public from additional crimes by him, and provide him with the mental health care and necessary corrective treatment he needs.

Trial courts have significant discretion in the sentencing process, and we see nothing in this case to suggest that this discretion was abused in a manner that would render this sentence substantively or procedurally unreasonable. The judgment is accordingly affirmed.

<u>AFFIRMED</u>

15

GREGORY, Circuit Judge, concurring in the majority opinion:

I commend the district court's exercise of its discretion in fashioning Steven Helton's sentence in this very difficult case. Five years in prison is well enough for the 21 year-old with no prior criminal convictions, who was physically and sexually abused by his stepfather, who grew up in multiple foster care homes since the age of six, and who was caught with 42 image files of child pornography on his computer.[1] J.A. 195, 206.[2] And, as the majority notes, the district court imposed the supervised release portion of Helton's sentence in conjunction with a downward variance from the applicable advisory Guideline range. The district court displayed courage in varying downward, and in crafting an appropriate, individualized sentence.

I.

The district court chose a sentence of 60 months of imprisonment followed by a lifetime term of supervised release for Helton's knowing possession of child pornography in violation of 18 U.S.C. § 2252(a)(5)(B) and 2252A(b)(2). Helton

---

[1] As the majority notes, only 42 of the 961 image files recovered by forensic investigators from Helton's computer were actively accessible for viewing. It appears the remaining files were thumbnail-sized images automatically generated by the Windows operating system.

[2] Citations to the J.A. refer to the parties' Joint Appendix filed in this case. Specifically, the facts referenced herein are contained in the sentencing hearing transcript.

17

appeals only the supervised release portion of his sentence. I agree with the majority that the district court committed no procedural error by adequately explaining why it thought this particular punishment sufficient to meet the goals of sentencing.

As is well known, reasonableness includes both procedural and substantive components. See United States v. Carter, 564 F.3d 325, 328 (4th Cir. 2009). "Procedural errors include 'failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence – including an explanation for any deviation from the Guidelines range.'" Id. (quoting Gall v. United States, 552 U.S. 38, 51 (2007)). Above all, the district court "must make an individualized assessment based on the facts presented." Gall, 552 U.S. at 50. In other words, the district court should "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Carter, 564 F.3d at 328.

Among the human failings the district court took into account at sentencing was that Helton's father abandoned him as a baby. J.A. 195. His mother suffered various mental health

18

problems. J.A. 195. When Helton was six years old, his stepfather physically and sexually abused him and his sister. J.A. 195. Both were placed with an aunt who drank and physically abused the children. J.A. 195. Helton was then removed to foster care, where he was found viewing child pornography. J.A. 195. It was during this time that Helton also admits he sexually abused a minor child. J.A. 195. When he was fourteen, Helton attended a mental health/sex offender treatment facility for two and a half years. J.A. 195. Next, he moved to a facility called the Burlington United Family Methodist Services, and things started to look up; while at Burlington, Helton obtained his GED and even enrolled in Fairmont State College. J.A. 195-97. He withdrew before completing the first semester, however, and at the age of eighteen returned to his mother's home.[3] J.A. 196-7. He became his disabled mother's caretaker and began abusing alcohol and other drugs himself. J.A. 196-97. He was nineteen when the police caught him in possession of child pornography.

It is against this backdrop that the district court emphasized that it was careful to sentence Helton "only for the

---

[3] According to Helton, upon matriculating he was told he had not completed the requisite financial aid forms. Without any adult assistance to navigate the system, and having "graduated" from foster care, he was forced to withdraw from college and return to his mother's residence.

offense to which [he] pled guilty." The court explained that it chose a sentence "sufficient to protect the public . . . and to avoid unwarranted disparities in sentencing of defendants of similar backgrounds and similar violations." In doing so, the court balanced Helton's age and lack of criminal convictions against his engaging in "repetitive cycles of downloading," which "provides the market for child pornography" and "often results in the abuse of minors." In the end, the district court decided "a sentence of incarceration longer than 60 months simply is not necessary to meet the goals of sentencing," especially in consideration of the lifetime term of supervised release. The court further "considered the need for th[e] sentence to provide . . . medical care and corrective treatment," leading to the special conditions of release including participation in medical evaluations and treatment.

There is no doubt that this explanation, following the district court's painstaking recollection of Helton's unfortunate childhood, was sufficiently individualized to meet the requirements of procedural reasonableness.

II.

Helton's appeal of the substantive reasonableness of his lifetime term of supervised release is a closer question. As the majority rightly recognizes, a district court enjoys wide

20

discretion in sentencing. The district court "is in a superior position to find facts and judge their import," United States v. Diosdado-Star, 630 F.3d 359, 366 (4th Cir. 2011), but appellate courts nevertheless play an important role in reviewing whether an abuse of that discretion has occurred. In reviewing substantive reasonableness, we measure the sentence against the statutory sentencing factors while "tak[ing] into account the totality of the circumstances." Gall, 552 U.S. at 51; see also United States v. Montes-Pineda, 445 F.3d 375, 378 (4th Cir. 2006).

Helton's burden on appeal is a difficult one to meet considering that a lifetime term of supervised release is indeed within the advisory Guidelines range and the maximum term authorized by statute. See U.S.S.G § 5D1.2; 18 U.S.C. § 3583(k). Ultimately the district court was faced with the history and characteristics of someone who admitted to having previously abused a child and who furthermore reverted to viewing child pornography after having completed years of a residential sex offender treatment program. J.A. 195. While there is a continuing debate on the linkage between possession of child pornography and sexual abuse of minors, it was not improper for the district court to consider the need "to afford adequate deterrence," id. § 3553(a)(2)(B), and "to protect the public from further crimes of the defendant," id.

21

§ 3553(a)(2)(C). In the totality of the circumstances, it is fair to say that Helton will benefit not from more time in prison, but from long-term supervision and compliance with drug dependency and psychosexual treatment programs. Therefore, even though I regret that Helton can see no redemptive light at the end of his long road to recovery, I cannot say the district court abused its discretion.

It is this same ambivalence, however, about offenders like Helton never being able to fully rejoin society as rehabilitated individuals that leads me to warn against undue deference to what are only advisory Guidelines. When we begin to accept these Guidelines as irrefutable truths, we tend to give ourselves to overgeneralizations like that made by the majority when it writes: "It would be almost unprecedented to credit a defendant's challenge to a sentence as substantively unreasonable when the district court actually reduced the term of imprisonment below the recommended Guidelines range." To the contrary, it can be unreasonable for a twenty-one year old with no prior criminal convictions to spend five years in prison even when the Guidelines advocate for a minimum term of six and a half years. And it can be unreasonable for that young man to have to ask his probation officer for permission to purchase a toy when, some great day later in his lifetime of supervision by the government, he becomes a grandparent.

The child pornography Guideline has been recognized as an "eccentric Guideline of highly unusual provenance which, unless carefully applied, can easily generate unreasonable results." United States v. Dorvee, 616 F.3d 174, 188 (2d Cir. 2010). For example, a defendant convicted of distributing child pornography over the Internet but who has never had any contact with a minor can receive a greater sentence than an individual who seeks out a minor online, arranges a meeting, and actually abuses the child. See id. at 176, 187. The Guideline also frequently punishes first time offenders with the same severity as more culpable offenders. This is because several of the § 2G2.2 enhancements of a defendant's base offense level are broadly defined and present in nearly all Internet child pornography cases, like an enhancement for using a computer. See, e.g., United States v. Burns, No. 07 CR 556, 2009 WL 3617448, at *7 (N.D. Ill. Oct. 27, 2009) ("[M]ost of the enhancements provided for in § 2G2.2 are of little use in distinguishing between offenders."). Statistics show that in non-production cases in fiscal year 2013, a two-level enhancement for using a computer applied in 95% of cases, a two-level enhancement for involvement of a child victim under the age of 12 (that is, a prepubescent minor) applied in 96% of cases, and a five-level enhancement for

600 or more images applied in 79% of cases.[4] Such realities have led the Sentencing Commission to conclude that § 2G2.2 "places a disproportionate emphasis on outdated measures of culpability," resulting in "penalty ranges [that] are too severe for some offenders and too lenient for other[s]."[5]

These limitations are the result of the Guideline having been "developed largely pursuant to congressional directives," as opposed to the Sentencing Commission's expertise. United States v. Grober, 624 F.3d 592, 608 (3d Cir. 2010); see also id. ("[T]o say that the final product is the result of Commission data, study, and expertise simply ignores the facts."). Congress has been "particularly active" in directing the Commission to increase base offense levels and impose various enhancements, which has resulted in a dramatic rise in penalties over the years.[6] These changes have taken place in the face of

---

[4] U.S. Sentencing Comm'n, Use of Guidelines and Specific Offense Characteristics 40-41 (2013), available at http://www.ussc.gov/sites/default/files/pdf/research-and-publica tions/federal-sentencing-statistics/guideline-application-frequencies/2013/Use_of_Guidelines_and_Specific_Offense_Characte ristics_Guideline_Calculation_Based_Revised.pdf.

[5] U.S. Sentencing Comm'n, Federal Child Pornography Offenses xvii (2012), available at http://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports /sex-offense-topics/201212-federal-child-pornography-offenses/ Full_Report_to_Congress.pdf [hereinafter Report to Congress].

[6] U.S. Sentencing Comm'n, The History of the Child Pornography Guidelines 1 (2009), available at http://www.ussc.gov/sites/default/files/pdf/research-and-publica (Continued)

resistance by the Commission, and in the form of Congress taking the unprecedented step of directly amending the Guidelines.[7] Thus, like the former crack cocaine Guidelines, the child pornography Guideline "do[es] not exemplify the Commission's exercise of its characteristic institutional role," which is to propose penalties "base[d on] its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise." Kimbrough v. United States, 552 U.S. 85, 108-09 (2007). For, what the data actually shows is that 70% of district court judges in 2010 thought the Guideline too severe for crimes of possession.[8] And, in fiscal year 2013, district courts imposed a sentence below the Guideline range in 718 of 1,626 non-production cases.[9]

This is why, when we talk about the slippery concept of reasonableness, we should be cautious of presuming that the

tions/research-projects-and-surveys/sex-offenses/20091030_ History_Child_Pornography_Guidelines.pdf.

[7] See Melissa Hamilton, The Efficacy of Severe Child Pornography Sentencing: Empirical Validity or Political Rhetoric?, 22 Stan. L. & Pol'y Rev. 545, 556 (2011).

[8] U.S. Sentencing Comm'n, Results of Survey of United States District Judges January 2010 Through March 2010, Question 8 (2010), available at http://www.ussc.gov/sites/default/files/ pdf/research-and-publications/research-projects-and-surveys/ surveys/20100608_Judge_Survey.pdf.

[9] U.S. Sentencing Comm'n, 2013 Sourcebook of Federal Sentencing Statistics, Table 28, available at http://www.ussc.gov/research-and-publications/annual-reports- sourcebooks/2013/sourcebook-2013; see also id. app. A (defining "Below Guideline Range with Booker/18 U.S.C. § 3553").

child pornography Guideline – as well as the Guideline for supervised release of child pornography offenders – always provides a reasoned departure point from which to calculate a sentence. Like much of the judiciary, the Commission does not view the Guideline this way for a defendant like Helton convicted of a non-production offense. In fact, the Commission has asked Congress to give it the authority to amend those provisions resulting from the legislature's directives.[10] It believes these amendments necessary "to better promote the purposes of punishment by accounting for the variations in offenders' culpability and sexual dangerousness."[11] Though recommended in 2012, these changes are still forthcoming. Luckily, in the meantime, there are judges like Judge Berger who understand that the totality of the circumstances sometimes requires a below-Guideline term to ensure a sentence is substantively reasonable.

---

[10] See Report to Congress, supra note 5, at 322.

[11] Id. at xvii. The Commission is also considering revising § 5D1.2 so that, as opposed to its current blanket recommendation of the statutory maximum for child pornography offenders, it would actually "provide[] guidance to judges to impose a term of supervised release . . . that is tailored to [an] individual offender's risk and corresponding need for supervision. Id. at xix.

III.

We measure our humanity by the justice we mete to those thought least deserving.  I join the majority in affirming the district court, which I believe did an admirable job crafting an individualized sentence.  Perhaps in the future, our Guidelines will evolve to become truly proportional to the severity of our crimes.  And perhaps then, a district court will not be in the lamentable position of having to balance the need to depart downward from an excessive Guideline term with an entire lifetime of supervision.