PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellant,*

v.                                              No. 08-4643

JACK DALE CARTER,
            *Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, District Judge.
(7:07-cr-00111-BO-2)

Argued: March 27, 2009

Decided: April 27, 2009

Before WILKINSON, MOTZ, and GREGORY,
Circuit Judges.

Vacated and remanded by published opinion. Judge Motz wrote the opinion, in which Judge Wilkinson and Judge Gregory joined.

## COUNSEL

**ARGUED:** Jennifer P. May-Parker, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellant. Terry F. Rose, Smithfield, North Carolina, for

Appellee. **ON BRIEF:** George E. B. Holding, United States Attorney, Anne M. Hayes, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellant.

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge:

Jack Dale Carter pleaded guilty to possessing a firearm after a felony conviction in violation of 18 U.S.C. § 922(g)(1) (2006). Carter's properly-calculated advisory Guidelines sentencing range is 37 to 46 months, but the district court sentenced him to a term of probation. The Government appeals, arguing that Carter's sentence is procedurally and substantively unreasonable. Because the district court failed to state any particularized basis to support its chosen sentence, we cannot uphold the sentence as procedurally reasonable or determine its substantive reasonableness. Accordingly, we vacate the sentence and remand for further proceedings.

I.

Carter's conviction arises out of his friendship with Preston Goforth, Jr., and Janet Solomon, a married couple who owned a federally-licensed firearm dealership. After learning in December 2005 that this dealership sold short-barreled rifles at gun shows in violation of the National Firearms Act, 26 U.S.C. §§ 5845(a), 5861 (2006), the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATFE") began an investigation. Undercover ATFE agents purchased eight short-barreled rifles from the dealership during seven controlled transactions. In an attempt to evade federal requirements, the dealership sold the firearms in two pieces.

To assist Goforth and Solomon during Goforth's terminal illness, Carter worked for the dealership at certain gun shows in North Carolina. On December 16, 2006, Carter assisted Solomon in the sale of two short-barreled rifles to an undercover ATFE agent. On May 26, 2007, Carter assisted in the sale of an additional short-barreled rifle.

Approximately four months later, on October 3, 2007, Carter consented to a search by law enforcement officers of his

home in Gold Hill, North Carolina. The officers found nine firearms inside an unlocked gun safe in Carter's bedroom. Carter claimed that the weapons belonged to his son.

The Government charged Carter with one count of conspiracy to violate the National Firearms Act, two counts of transferring a firearm in violation of the National Firearms Act (one count for each transaction), and two counts of being a felon in possession of a firearm (again, one count for each transaction). In exchange for the Government's agreement to dismiss the first four counts of the indictment, Carter pleaded guilty to being a felon in possession of a firearm in connection with the May 26, 2007 transaction.

In a presentence investigation report ("PSR"), a probation officer calculated Carter's offense level as 21. The officer suggested a base offense level of 20 because 26 U.S.C. § 5845(a) regulates short-barreled rifles and federal law prohibits felons, like Carter, from possessing firearms. *See* U.S. Sentencing Guidelines Manual § 2K2.1(a)(4)(B) (2007). The officer then recommended a four-level enhancement because the "offense," *i.e.* "the offense of conviction and all relevant conduct," *id.* § 1B1.1 cmt. n.1, involved twelve guns, *id.* § 2K2.1(b)(1)(B), and a three-level reduction for acceptance of responsibility, *id.* § 3E1.1(b). Finally, the probation officer calculated Carter's criminal history as category I. (Because the felony convictions that formed the basis for Carter's felon-in-possession charge took place in 1986, they garnered him no criminal history points. *Id.* § 4A1.2(e).) These calculations yielded an advisory Guidelines range of 37 to 46 months imprisonment.

In the district court, Carter raised two principal objections to the PSR. First, he argued that the guns found in his home did not belong to him, and therefore the court should not use them as a basis for enhancing his sentence by four levels. The district court disagreed, finding that the Government established Carter's responsibility for those weapons. Second, Car-

ter contended that on May 26 he had not possessed a short-barreled rifle but only two component pieces of such a weapon. The court similarly rejected this argument and adopted "the base offense level and the specific offense characteristic[s]" set forth in the PSR.

The court then invited Carter to argue for a below-Guidelines sentence, recognizing that the 37- to 46-month range was "just an advisory level." After listening, without comment, to a short argument from defense counsel requesting a variance, the district court asked the probation officer for the sentencing range for an offense level 12, criminal history category I crime. The probation officer replied that such a range would be 10 to 16 months. The court further inquired, "[i]sn't that how it would work out if everything was according to the defendant's presentation?"[1] After the probation officer agreed, the district court announced that it intended to depart to this sentencing range. Following brief additional argument, the court adopted a downward variance and sentenced Carter to a five-year term of probation, 200 hours of community service, and a $1000 fine.

The Government noted a timely appeal of this sentence.

## II.

In reviewing any sentence, "whether inside, just outside, or significantly outside the Guidelines range," we apply a "deferential abuse-of-discretion standard." *Gall v. United States*, 128 S. Ct. 586, 591 (2007). We must first "ensure that the district court committed no significant procedural error." *Id.* at 597. If, and only if, we find the sentence procedurally reason-

---

[1]If the district court had agreed with Carter's objections to the PSR, the base offense level—possession of a firearm by a prohibited person—would have been 14. U.S. Sentencing Guidelines Manual § 2K2.1(a)(6) (2007). With a two-level reduction for acceptance of responsibility, *id.* § 3E1.1(a), Carter's total offense level would have been 12.

able can we "consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id.*; *see also United States v. Stephens*, 549 F.3d 459, 465 (6th Cir. 2008).

Procedural errors include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall*, 128 S. Ct. at 597.

When rendering a sentence, the district court "must make an *individualized* assessment based on the facts presented." *Id.* (emphasis added). That is, the sentencing court must apply the relevant § 3553(a) factors to the specific circumstances of the case before it. Such individualized treatment is necessary "to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Id.* at 598 (citation omitted).

Moreover, the district court must "state in open court" the particular reasons supporting its chosen sentence. 18 U.S.C. § 3553(c) (2006). In doing so, "[t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 127 S. Ct. 2456, 2468 (2007). This not only "allow[s] for meaningful appellate review" but it also "promote[s] the perception of fair sentencing." *Gall*, 128 S. Ct. at 597. "Where the defendant or prosecutor presents nonfrivolous reasons for imposing a different sentence" than that set forth in the advisory Guidelines, a district judge should address the party's arguments and "explain why he has rejected those arguments." *Rita*, 127 S. Ct. at 2468.

Here, the district court did not justify Carter's sentence with an *individualized* rationale. To be sure, the district court offered a variety of statements respecting the below-Guidelines sentence. For example, the court stated that "there is an appealing argument by [the] defense that this overpunishes his particular conduct." But the court did not explain why a Guidelines sentence would "overpunish" Carter. Similarly, the district court stated that it was "telling the reviewing body that [it was] looking at the four purposes in Section 3553(a)(2)," and then summarized those four purposes. But the court did not explain how those purposes applied to Carter. The district court also stated that it was "deliberating on and integrating the seven factors that the reviewing court wants to know that the trial court used and considered and reflected on and were the foundation of the sentencing basis," and then summarized those factors. But once again, the district court did not explain how those factors related to Carter. Finally, although the district court stated that it took "into account all of the pertinent policy statements issued by the Sentencing Commission," it did not explain which policy statements it found relevant to Carter.

The district court thus erred in failing to articulate how the sentencing factors applied to the facts of the particular case before it. The district court's asserted "reasons" could apply to *any* sentence, regardless of the offense, the defendant's personal background, or the defendant's criminal history. Indeed —save for the lone, unexplained statement that a within-Guidelines sentence would "overpunish" Carter—the district court could have made precisely the same statements in support of an *above*-Guidelines sentence. As we have previously explained, the district court need not "robotically tick through § 3553(a)'s every subsection." *United States v. Johnson*, 445 F.3d 339, 345 (4th Cir. 2006). But at the same time, a talismanic recitation of the § 3553(a) factors without application to the defendant being sentenced does not demonstrate reasoned decisionmaking or provide an adequate basis for appellate review. *See Stephens*, 549 F.3d at 466-67.

Carter maintains that numerous facts in the record amply justify the district court's below-Guidelines sentence. Carter points to his testimony that a desire to "help a dying friend" motivated him; to the fact that the prior felony convictions, which provided the basis for the felon-in-possession offense, were 22 years old; to letters that attested to his good moral character; and to his responsibility for the care of his elderly mother. He further notes that he provided a fingerprint sample prior to working at the gun shows and that he thought Solomon had obtained clearance from the ATFE for his employment. The district court, however, did not adopt any of these reasons as its rationale for the sentence. We cannot determine from this record if the court found some, all, or none of them persuasive. Perhaps the district court based the sentence in whole or in part on altogether different reasons. We simply do not know.

Carter asks us to presume that the district court adopted his arguments. Prior to *United States v. Booker*, 543 U.S. 220 (2005), *Rita*, and *Gall*, perhaps we could have done so. *See United States v. Johnson*, 138 F.3d 115, 119 (4th Cir. 1998). But the Supreme Court's recent sentencing jurisprudence plainly precludes any presumption that, when imposing a sentence, the district court has silently adopted arguments presented by a party. Rather, "the district judge," not an appellate court, "must make an individualized assessment based on the facts presented" to him. *Gall*, 128 S. Ct. at 596-97. In reviewing this assessment, an appellate court may not guess at the district court's rationale, searching the record for statements by the Government or defense counsel or for any other clues that might explain a sentence.

Regardless of whether the district court imposes an above, below, or within-Guidelines sentence, it must place on the record an "individualized assessment" based on the particular facts of the case before it.[2] *Id.* at 597-98. This individualized

---

[2]An appellate court may presume that a within-Guideline sentence is *substantively* reasonable, but "the sentencing court does not enjoy the ben-

assessment need not be elaborate or lengthy, but it must provide a rationale tailored to the particular case at hand and adequate to permit "meaningful appellate review." *Id.* at 597. Because the record here does not demonstrate that the district court conducted such an assessment and so does not reveal why the district court deemed the sentence it imposed appropriate, we cannot hold the sentence procedurally reasonable.[3]

## III.

For the foregoing reasons, we vacate the judgment of the district court and remand for resentencing.[4]

*VACATED AND REMANDED*

---

efit of a legal presumption that the Guidelines sentence should apply." *Rita*, 127 S. Ct. at 2465. Thus, the district court must state the individualized reasons that justify a sentence, even when sentencing a defendant within the Guidelines range. *See id.* at 2468; *Stephens*, 549 F.3d at 466-67.

[3]In reaching this holding, we join our sister circuits who, after *Gall*, have similarly vacated sentences as procedurally unreasonable because the district court failed to offer a sufficient rationale for the sentence. *See, e.g.*, *United States v. Gapinski*, __ F.3d __, 2009 WL 860059, at *1 (6th Cir. Apr. 2, 2009) (vacating sentence based on downward variance for failing to explain denial of additional downward variance); *Stephens*, 549 F.3d at 466-67 (vacating within-Guidelines sentence); *United States v. Livesay*, 525 F.3d 1081, 1093-94 (11th Cir. 2008) (vacating sentence based on a downward variance).

[4]The Government also argues that Carter's sentence is substantively unreasonable. Having found the sentence procedurally unreasonable, however, we cannot review the sentence for substantive reasonableness. *See Gall*, 128 S. Ct. at 597; *Stephens*, 549 F.3d at 465, 467; *United States v. Evans*, 526 F.3d 155, 169 (4th Cir. 2008) (Gregory, J., concurring). An appellate court may not weigh the § 3553(a) factors in the first instance; it can only determine whether the district court acted within its discretion in sentencing. *Gall*, 128 S. Ct. at 597.