**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 12-4828**

───────────────

UNITED STATES OF AMERICA,

               Plaintiff - Appellee,

      v.

CARLOS BAUTISTA-VILLANUEVA, a/k/a Andres Bautista Villanueva, a/k/a Roberto Gutierrez Rodriguez, a/k/a Paulo Bautista,

               Defendant - Appellant.

───────────────

Appeal from the United States District Court for the District of Maryland, at Baltimore. William D. Quarles, Jr., District Judge. (1:12-cr-00222-WDQ-1)

───────────────

Argued: September 20, 2013      Decided: November 21, 2013

───────────────

Before NIEMEYER and AGEE, Circuit Judges, and HAMILTON, Senior Circuit Judge.

───────────────

Vacated and remanded by unpublished per curiam opinion. Judge Niemeyer wrote a dissenting opinion.

───────────────

**ARGUED:** Joanna Beth Silver, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Baltimore, Maryland, for Appellant. Rod J. Rosenstein, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** James Wyda, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Baltimore, Maryland, for Appellant. Roger K. Picker, Special Assistant

United States Attorney, UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Section 5D1.1(c) of the United States Sentencing Guidelines (USSG) provides that "[t]he court ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment." USSG § 5D1.1(c). Official commentary to this Guideline explains that "[t]he court should, however, consider imposing a term of supervised release on such a defendant if the court determines it would provide an added measure of deterrence and protection based on the facts and circumstances of a particular case." USSG § 5D1.1, comment. (n.5).

In the instant case, supervised release is not required by statute and the defendant, Carlos Bautista-Villanueva (Defendant), is a deportable alien who likely will be deported back to Mexico after serving his sentence of fifty-seven months' imprisonment resulting from his conviction on one count of illegal reentry by an aggravated felon, 8 U.S.C. §§ 1326(a) and (b)(2). Although the district court imposed a three-year term of supervised release upon Defendant, the record does not disclose whether the district court did so after determining that imposition of a term of supervised release upon Defendant would provide an added measure of deterrence and protection based on the facts and circumstances of Defendant's case, such

- 3 -

that his case would not be considered ordinary for purposes of USSG § 5D1.1(c).

On appeal, Defendant acknowledges that the Guidelines are advisory as opposed to mandatory; however, Defendant argues that USSG § 5D1.1(c) "must have some effect, and it cannot be procedurally reasonable for a district court to ignore it completely, with no supportive findings, explicit or implicit, in the record." (Defendant's Opening Br. at 14). "For this reason," Defendant contends, "the imposition of a period of supervised release in this case was procedurally unreasonable, and this Court should vacate the sentence and remand the case for resentencing." Id.

Contrary to the government's position on appeal, the record does not disclose whether the district court, in imposing a three-year term of supervised release upon Defendant, considered USSG § 5D1.1(c) and its relevant commentary sufficiently for us to conduct meaningful appellate review regarding whether the district court performed an adequate individualized assessment of the propriety of imposing a term of supervised release upon Defendant. Accordingly, we vacate Defendant's sentence and remand this case to the district court for the limited purpose of the district court revisiting its decision to impose a term of supervised release upon Defendant. We express no opinion regarding how the district court should rule on this issue.

However, in so ruling, the district court must perform an individualized assessment of the propriety of imposing a term of supervised release upon Defendant sufficient for us to conduct meaningful appellate review, including explaining its consideration of the advisory guidance provided in USSG § 5D1.1(c) and the official commentary to this Guideline, see USSG § 5D1.1, comment. (n.5); see United States v. Carter, 564 F.3d 325, 328 (4th Cir. 2009) ("Procedural errors include . . . failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." (internal quotation marks omitted)). If the district court sentences Defendant to a term of supervised release on remand, and if Defendant believes the district court procedurally erred with respect to imposing such term, Defendant may note another appeal on that ground in compliance with Federal Rule of Appellate Procedure 4(b).

VACATED AND REMANDED

NIEMEYER, Circuit Judge, dissenting:

The district court conducted a thorough, individualized assessment of Bautista-Villanueva's criminal history and personal characteristics and provided a reasonable justification for the sentence it imposed on him. The majority admits as much, as it finds no fault with the district court's explanation for imposing the sentence of imprisonment. Nonetheless, the majority holds that the district court erred by imposing a term of supervised release without giving an explicit justification in view of U.S.S.G. § 5D1.1(c) (stating that a court should "ordinarily" not impose a term of supervised release for a defendant who "likely will be deported after imprisonment").

After noting during the sentencing hearing the fact that Bautista-Villanueva had twice before illegally entered the United States, the district court imposed a three-year term of supervised release as part of Bautista-Villanueva's sentence, even though he would likely be deported after serving his prison term, and it required, as a condition, that Bautista-Villanueva "cooperat[e] with ICE officials" and, if deported, "not reenter the United States without express permission of the Attorney General" or his representative. The majority faults the district court's imposition of supervised release because U.S.S.G. § 5D1.1(c) provides that supervised release is not ordinarily imposed when the defendant will likely be deported

- 6 -

and the court did not reference § 5D1.1(c) and explain why this case was not ordinary.

While the district court did not say explicitly, when imposing supervised release, why this case was extraordinary, the record shows that the district court understood that it was not the ordinary situation involving the deportation of an alien who had committed a crime in the United States. The court's discussion of Bautista-Villanueva's <u>repeated</u> illegal entries and its requirement that he not reenter make clear that the court was concerned about deterrence.

In requiring a more explicit and detailed explanation, the majority has created a new procedural formalism that will be required whenever courts sentence deportable aliens to supervised release.

Because I think such a requirement finds no support in the Sentencing Guidelines and because the sentencing court in the present case made clear that it was imposing supervised release because of Bautista-Villanueva's history and as a deterrence, I respectfully dissent.

I

Carlos Bautista-Villanueva is a 36-year-old citizen of Mexico, who first entered the United States illegally when he was 13. He was removed from the United States in 2007 and

illegally entered the country a second time in 2010. When Bautista-Villanueva was thereafter found in Baltimore, Maryland, he was charged with unlawful reentry by an aggravated felon, in violation of 8 U.S.C. § 1326(a), (b)(2), and pleaded guilty to the charge.

In the presentence report, the probation officer noted that Bautista-Villanueva's "guideline range for . . . supervised release" was one to three years. But, the report continued, "[p]ursuant to U.S.S.G. §5D1.1(c), the Court ordinarily should not impose a term of supervised release in a case in which the defendant is a deportable alien who will likely be deported after imprisonment." The presentence report noted that Bautista-Villanueva would likely be deported following the service of his sentence.

At the sentencing hearing, Bautista-Villanueva's counsel urged the court to issue a light term of imprisonment and noted that "pursuant to the Guideline, 5D1.1(c), . . . a period of supervised release is not necessary, nor is it really recommended in this case, because he will be deported." Before imposing its sentence, the court recounted Bautista-Villanueva's criminal history and described his record of illegal entry, stating, "Mr. Bautista-Villanueva is a citizen of Mexico. He was removed from the United States to Mexico on December 5, 2007, reentered the country without authorization, and was found

here on March 28th, 2012, when he was taken into custody by ICE officers." The court went on to recount aspects of Bautista-Villanueva's personal history -- that he had an abusive father, completed eleventh grade, had been employed in the construction industry, and had a wife and son. It then provided the following assessment:

> In this case, the seriousness of his criminal history, I think, is balanced against his age and . . . the fact that . . . the offenses were committed over a relatively brief period of time. Accordingly, I do believe that there is some over-representation of seriousness of the record. Accordingly, I will grant a departure – a one criminal history level departure downward, and I believe that, given the Defendant's age and plans for life in Mexico and what I perceive as a reduced likelihood of recidivism, a sentence at the bottom of the advisory guidelines range . . . is sufficient but not greater than necessary to reflect the seriousness of the offense, provide just punishment and adequate deterrence, promote respect for the law, and protect the public from further crimes of the Defendant.
> Accordingly, Mr. Bautista-Villanueva, I commit you to the custody of the Attorney General or his authorized designee in the Bureau of Prisons to serve a term of imprisonment of 57 . . . months; <u>impose a three-year term of supervised release with special conditions of cooperation with ICE officials, and that you follow any lawful order entered in your case by the Immigration authorities</u>.
> I will also recommend drug and alcohol screening and treatment as a part of the supervised release.

(Emphasis added). In its written judgment, the court included as conditions of Bautista-Villanueva's supervised release: "The defendant shall be surrendered to a duly authorized immigration official for deportation in accordance with established

- 9 -

procedures provided by the Immigration and Naturalization Act. If ordered deported, the defendant shall not reenter the United States without express permission of the Attorney General, or his/her designated representative."

II

The majority has no qualms with the district court's explanation and justification for the 57-month term of imprisonment, but it finds that court's explanation for the imposition of supervised release procedurally unreasonable. On remand, the majority would have the district court "explain[] its consideration of the advisory guidance provided in USSG § 5D1.1(c) and the official commentary to this Guideline." Ante, at 5.

To my knowledge, this is the first instance where an appellate court has reversed a district court for inadequately justifying an imposition of supervised release under § 5D1.1(c).[*]

---

[*] I am aware of two cases in which appellate courts have found error with sentencing courts' impositions of supervised release under § 5D1.1(c). United States v. Butler, No. 11-4383, 2013 U.S. App. LEXIS 14736 (3d Cir. July 19, 2013); United States v. Chavez-Trejo, No. 12-40006, 2013 U.S. App. LEXIS 6734 (5th Cir. Apr. 3, 2013) (per curiam). In both of these cases, the sentencing court had made clear errors of law: in Butler, by relying on the outdated 2010 Guidelines; and, in Chavez-Trejo, by mistakenly stating that supervised release was mandatory. Neither of these cases are akin to the present facts, though, where the court was presented with correct statements of law and simply failed to explicitly justify the term of supervised release.

The majority appears to be fashioning a new procedural rule that district courts hereafter must always explicitly justify an imposition of supervised release on deportable aliens, perhaps with specific reference to U.S.S.G. § 5D1.1(c).

Yet, U.S.S.G. § 5D1.1(c) does not impose such a procedural requirement. Indeed, the language of § 5D1.1(c) is conspicuously hortatory ("The court ordinarily should not impose a term of supervised release . . ."). See United Sates v. Dominguez-Alvarado, 695 F.3d 324, 329 (5th Cir. 2012). And the Commentary to § 5D1.1(c) instructs courts to "consider imposing a term of supervised release . . . if the court determines it would provided an added measure of deterrence and protection based on the facts and circumstances of a particular case." (Emphasis added). This is because, as the Fifth Circuit has noted, the addition of § 5D1.1(c) was "animated primarily by administrative concerns inherent in trying to administer supervised release as to someone who has been deported." United States v. Becerril-Peña, 714 F.3d 347, 350 (5th Cir. 2013).

Like the Fifth Circuit, I can find no indication that the Sentencing Commission intended § 5D1.1(c) to provide deportable aliens with a new procedural shield to protect them from supervised release. See Becerril-Peña, 714 F.3d at 350. Indeed, such a motive would have been rather illogical. As Bautista-Villanueva's counsel admitted at oral argument,

supervised release is inconsequential to aliens who do not illegally reenter the United States. Supervised release for deportable aliens is only useful because it streamlines removal proceedings against aliens who do illegally reenter. I find it difficult to believe that the Sentencing Commission promulgated § 5D1.1(c) to make more difficult the removal of illegal reentrants. Indeed, if that were the goal, supervised release would rationally never be permitted for deportable aliens. To the contrary, § 5D1.1(c) appears to be aimed at eliminating the bureaucratic machinery of supervised release in cases where it is unnecessary, while nonetheless giving district courts the option of imposing it to provide an additional deterrence where illegal reentry might likely follow.

I would hold that a district court fulfills its procedural obligations in these circumstances by "apply[ing] the relevant § 3553(a) factors to the specific circumstances of the case before it." United States v. Carter, 564 F.3d 325, 328 (4th Cir. 2009). And when a court imposes supervised release on a deportable alien, the relevant § 3553(a) factors include deterrence and protection of the public. The district court would need to "'state in open court' the particular reasons supporting its chosen sentence." Id. (citing 18 U.S.C. § 3553(c)) (emphasis added). But rather than requiring a district court to repeat its justification for both the term of

- 12 -

imprisonment and the term of supervised release, I would find a district court's explanation procedurally reasonable as long as it sufficiently justified the sentence as a whole.

This is just the approach that every circuit has adopted up until this point – including ours. See, e.g., United States v. Ramirez, 503 F. App'x 226 (4th Cir. 2013) (per curiam) (affirming a sentence of supervised release for a deportable alien even though the district court did not explicitly justify the supervised release or discuss § 5D1.1(c)); United States v. Deleon-Ramirez, No. 12-4642, 2013 U.S. App. LEXIS 20906 (4th Cir. Oct. 16, 2013) (per curiam) (same); United States v. Sanchez-Mendez, 521 F. App'x 142 (4th Cir. 2013) (per curiam) (same); United States v. Jimenez-Manuel, 494 F. App'x 411 (4th Cir. 2012) (per curiam) (same); United States v. Alvarado, 720 F.3d 153, 158 (2d Cir. 2013) ("A district court is not required explicitly to link its finding that added deterrence is needed to its decision to impose a term of supervised release"); United States v. Valdez-Cruz, 510 F. App'x 834, 840 (11th Cir. 2013) (per curiam) ("Although Valdez-Cruz argues that the court failed to give a case-specific reason for imposing a term of supervised release, the district court specifically discussed the need for deterrence in Valdez-Cruz's case and the record supports the court's determination"); Dominguez-Alvarado, 695 F.3d at 330 (finding the following explanation sufficient to justify

supervised release for a deportable alien: "I gave the sentence after looking at the factors in 3553(a), to deter future criminal conduct, his particular background and characteristics, which apparently do not make him a welcome visitor to this country").

I would hold further that the district court in the present case "adequately explain[ed] the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." Gall v. United States, 552 U.S. 38, 50 (2007). The district court's "individualized assessment" included a careful consideration of Bautista-Villanueva's criminal and personal history. Carter, 564 F.3d at 330. The court noted that the sentence it was imposing was "sufficient but not greater than necessary to reflect the seriousness of the offense, provide just punishment and adequate deterrence, promote respect for the law, and protect the public from further crimes of the Defendant." It is clear from the record that the district court imposed the term of supervised release because it feared that Bautista-Villanueva would illegally return to the United States. The district court noted that Bautista-Villanueva had illegally entered the United States twice in the past, and it imposed, as a condition of the supervised release, requirements that Bautista-Villanueva "cooperat[e] with ICE officials" and, if deported, that he "not reenter the United

- 14 -

States without express permission of the Attorney General, or his/her designated representative." Given Bautista-Villanueva's history of illegal reentry, the district court's imposition of supervised release was reasonable.

I would affirm.