GREGORY, Circuit Judge,
concurring in the majority opinion:
I commend the district court’s exercise of its discretion in fashioning Steven Helton’s sentence in this very difficult case. Five years in prison is well enough for the 21 year-old with no prior criminal convictions, who was physically and sexually abused by his stepfather, who grew up in multiple foster care homes since the age of six, and who was caught with 42 image files of child pornography on his computer.[1] J.A. 195, 206.[2] And, as the majority notes, the district court imposed the supervised release portion of Helton’s sentence in conjunction with a downward variance from the applicable advisory Guideline range. The district court displayed courage in varying downward, and in crafting an appropriate, individualized sentence.
I.
The district court chose a sentence of 60 months of imprisonment followed by a lifetime term of supervised release for Helton’s knowing possession of child pornography in violation of 18 U.S.C. § 2252(a)(5)(B) and 2252A(b)(2). Helton appeals only the supervised release portion of his sentence. I agree with the majority that the district court committed no procedural error by adequately explaining why it' thought this particular punishment sufficient to meet the goals of sentencing.
As is well known, reasonableness includes both procedural and substantive components. See United States v. Carter, *156 564 F.3d 325, 328 (4th Cir.2009). “Procedural errors include ‘failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence' — including an explanation for any deviation from the Guidelines range.’ ” Id. (quoting Gall v. United States, 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007)). Above all, the district court “must make an individualized assessment based on the facts presented.” Gall, 552 U.S. at 50, 128 S.Ct. 586. In other words, the district court should “consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.” Carter, 564 F.3d at 328.
Among the human failings the district court took into account at sentencing was that Helton’s father abandoned him as a baby. J.A. 195. His mother suffered various mental health problems. J.A. 195. When Helton was six years old, his stepfather physically and sexually abused him and his sister. J.A. 195. Both were placed with an aunt who drank and physically abused the children. J.A. 195. Helton was then removed to foster care, where he was found viewing child pornography. J.A. 195. It was during this time that Helton also admits he sexually abused a minor child. J.A. 195. When he was fourteen, Helton attended a mental health/ sex offender treatment facility for two and a half years. J.A. 195. Next, he moved to a facility called the Burlington United Family Methodist Services, and things started to look up; while at Burlington, Helton obtained his GED and even enrolled in Fairmont State College. J.A. 195-97. He withdrew before completing the first semester, however, and at the age of eighteen returned to his mother’s home.[3] J.A. 196-7. He became his disabled mother’s caretaker and began abusing alcohol and other drugs himself. J.A. 196-97. He was nineteen when the police caught him in possession of child pornography.
It is against this backdrop that the district court emphasized that it was careful to sentence Helton “only for the offense to which [he] pled guilty.” The court explained that it chose a sentence “sufficient to protect the public ... and to avoid unwarranted disparities in sentencing of defendants of similar backgrounds and similar violations.” In doing so, the court balanced Helton’s age and lack of criminal convictions against his engaging in “repetitive cycles of downloading,” which “provides the market for child pornography” and “often results in the abuse of minors.” In the end, the district court decided “a sentence of incarceration longer than 60 months simply is not necessary to meet the goals of sentencing,” especially in consideration of the lifetime term of supervised release. The court further “considered the need for th[e] sentence to provide ... medical care and corrective treatment,” leading to the special conditions of release including participation in medical evaluations and treatment.
There is no doubt that this explanation, following the district court’s painstaking recollection of Helton’s unfortunate childhood, was sufficiently individualized to *157 meet the requirements of procedural reasonableness.
II.
Helton’s appeal of the substantive reasonableness of his lifetime term of supervised release is a closer question. As the majority rightly recognizes, a district court enjoys wide discretion in sentencing. The district court “is in a superior position to find facts and judge their import,” United, States v. Diosdado-Star, 630 F.3d 359, 366 (4th Cir.2011), but appellate courts nevertheless play an important role in reviewing whether an abuse of that discretion has occurred. In reviewing substantive reasonableness, we measure the sentence against the statutory sentencing factors while “tak[ing] into account the totality of the circumstances.” Gall, 552 U.S. at 51, 128 S.Ct. 586; see also United States v. Montes-Pineda, 445 F.3d 375, 378 (4th Cir .2006).
Helton’s burden on appeal is a difficult one to meet considering that a lifetime term of supervised release is indeed within the advisory Guidelines range and the maximum term authorized by statute. See U.S.S.G § 5D1.2; 18 U.S.C. § 3583(k). Ultimately the district court was faced with the history and characteristics of someone who admitted to having previously abused a child and who furthermore reverted to viewing child pornography after having completed years of a residential sex offender treatment program. J.A. 195. While there is a continuing debate on the linkage between possession of child pornography and sexual ábuse of minors, it was not improper for the district court to consider the need “to afford adequate deterrence,” id. § 3553(a)(2)(B), and “to protect the public from further crimes of the defendant,” id. § 3553(a)(2)(C). In the totality of the circumstances, it is fair to say that Helton will benefit not from more time in prison, but from long-term supervision and compliance with drug dependency and psychosexual treatment programs. Therefore, even though I regret that Helton can see no redemptive light at the end of his long road to recovery, I cannot say the district court abused its discretion.
It is this same ambivalence, however, about offenders like Helton never being able to fully rejoin society as rehabilitated individuals that leads me to warn against undue deference to what are only advisory Guidelines. When we begin to accept these Guidelines as irrefutable truths, we tend to give ourselves to overgeneralizations like that made by the majority when it writes: “It would be almost unprecedented to credit a defendant’s challenge to a sentence as substantively unreasonable when the district court actually reduced the term of imprisonment below the recommended Guidelines range.” To the contrary, it can be unreasonable for a twenty-one year old with no prior criminal convictions to spend five years in prison even when the Guidelines advocate for a minimum term of six and a half years. And it can be unreasonable for that young man to have to ask his probation officer for permission to purchase a toy when, some great day later in his lifetime of supervision by the government, he becomes a grandparent.
The child pornography Guideline has been recognized as an “eccentric Guideline of highly unusual provenance which, unless carefully applied, can easily generate unreasonable results.” United States v. Dorvee, 616 F.3d 174, 188 (2d Cir.2010). For example, a defendant convicted of distributing child pornography over the Internet but who has never had any contact with a minor can receive a greater sentence than an individual who seeks out a minor online, arranges a- meeting, and actually abuses the child. See id. at 176, 187. The Guide *158 line also frequently punishes first time offenders with the same severity as more culpable offenders. This is because several of the § 2G2.2 enhancements of a defendant’s base offense level are broadly defined and present in nearly all Internet child pornography cases, like an enhancement for using a computer. See, e.g., United States v. Bums, No. 07 CR 556, 2009 WL 3617448, at *7 (N.D.Ill. Oct. 27, 2009) (“[M]ost of the enhancements provided for in § 2G2.2 are of little use in distinguishing between offenders.”). Statistics show that in non-production cases in fiscal year 2013, a two-level enhancement for using a- computer applied in 95% of cases, a two-level enhancement for involvement of a child victim under the age of 12 (that is, a prepubescent minor) applied in 96% of cases, and a five-level enhancement for 600 or more images applied in 79% of cases.[4] Such realities have led the Sentencing Commission to conclude that § 2G2.2 “places a disproportionate emphasis on outdated measures of culpability,” resulting in “penalty ranges [that] are too severe for some offenders and too lenient for other[s].”[5]
These limitations are the result of the Guideline having been “developed largely pursuant to congressional directives,” as opposed to the Sentencing Commission’s expertise. United States v. Grober, 624 F.3d 592, 608 (3d Cir.2010); see also id. (“[T]o say that the final product is the result of Commission data, study, and expertise simply ignores the facts.”). Congress has been “particularly active” in directing the Commission to increase base offense levels and impose various enhancements, which has resulted in a dramatic rise in penalties over the years.[6] These changes have taken place in the face of resistance by the Commission, and in the form of Congress taking the unprecedented step of directly amending the Guidelines.[7] Thus, like the former crack cocaine Guidelines, the child pornography Guideline “do[es] not exemplify the Commission’s exercise of its characteristic institutional role,” which is to propose penalties “base[d on] its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise.” Kimbrough v. United States, 552 U.S. 85,108-09, 128 S.Ct. 558,169 L.Ed.2d 481 (2007). For, what the data actually shows is that 70% of district court judges in 2010 thought the Guideline too severe for crimes of possession.[8] And, in fiscal *159 year 2013, district courts imposed a sentence below the Guideline range in 718 of 1,626 non-production cases.[9]
This is why, when we talk about the slippery concept of reasonableness, we should be cautious of presuming that the child pornography Guideline — as well as the Guideline for supervised release of child pornography offenders — always provides a reasoned departure point from which to calculate a sentence. Like much of the judiciary, the Commission does not view the Guideline this way for a defendant like Helton convicted of a non-production offense. In fact, the Commission has asked Congress to give it the authority to amend those provisions resulting from the legislature’s directives.[10] It believes these amendments necessary “to better promote the purposes of punishment by accounting for the variations in offenders’ culpability and sexual dangerousness.”[11] Though recommended in 2012, these changes are still forthcoming. Luckily, in the meantime, there are judges like Judge Berger who understand that the totality of the circumstances sometimes requires a below-Guideline term to ensure a sentence is substantively reasonable.
III.
We measure our humanity by the justice we mete to those thought least deserving. I join the majority in affirming the district court, which I believe did an admirable job crafting an individualized sentence. Perhaps in the future, our Guidelines will evolve to become truly proportional to the severity of our crimes. And perhaps then, a district court will not be in the lamentable position of having to balance the need to depart downward from an excessive Guideline term with an entire lifetime of supervision.

. As the majority notes, only 42 of the 961 image files recovered by forensic investigators from Helton's computer were actively accessible for viewing. It appears the remaining files were thumbnail-sized images automatically generated by the Windows operating system.

. Citations to the J.A. refer to the parties’ Joint Appendix filed in this case. Specifically, the facts referenced herein are contained in the sentencing hearing transcript.

. According to Helton, upon matriculating he was told he had not completed the requisite financial aid forms. Without any adult assistance to navigate the system, and having “graduated’' from foster care, he was forced to withdraw from college and return to his mother's residence.

. U.S. Sentencing Comm'n, Use of Guidelines and Specific Offense Characteristics 40-41 (2013), available at http://www.ussc.gov/sites/ default/files/pdf/research-and-publications/ federal-sentencing-statistics/guideline-application-frequencies/2013/Use_of_ Guidelines_and_Specific_Offense_Characte ristics_Guideline_Calculation_Based_Revised. pdf.

. U.S. Sentencing Comm'n, Federal Child Pornography Offenses xvii (2012), available at http://www.ussc.gov/sites/default/files/pdl/ news/congressional-testimony-and-reports/ sex-offense-topics/2 01212-federal-child pornography-offenses/FulLReport_to_ Congress.pdf [hereinafter Report to Congress],

. U.S. Sentencing Comm’n, The History of the Child Pornography Guidelines 1 (2009), available at http://www.ussc.gov/sites/default/ files/pdf/research-and-publications/researchprojects-and-surveys/sex-offenses/20091030_ History_Child_Pornography_Guidelines.pdf.

. See Melissa Hamilton, The Efficacy of Severe Child Pornography Sentencing: Empirical Validity or Political Rhetoric?, 22 Stan. L. & Pol'y Rev. 545, 556 (2011).

. U.S. Sentencing Comm'n, Results of Survey of United States District Judges January 2010 Through March 2010, Question 8 (2010), available at http://www.ussc.gov/sites/default/ files/pdi/research-and-publications/researchprojects-and-surveys/surveys/20100608_ Judge_Survey.pdf.

. U.S. Sentencing Comm’n, 2013 Sourcebook of Federal Sentencing Statistics, Table 28, available at http://www.ussc.gov/research- and-publications/annual-reportssourcebooks/2013/sourcebook-2013; see also id. app. A (defining Below Guideline Range with Booker/18 U.S.C. § 3553 ).

. See Report to Congress, supra note 5, at 322

. Id. atxvii. The Commission is also considering revising § 5D1.2 so that, as opposed to its current blanket recommendation of the statutory maximum for child pornography offenders, it would actually "provided guidanee to judges to impose a term of supervised release ... that is tailored to [an] individual offender's risk and corresponding need for supervision. Id. at xix.