**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-4090

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JAMES MONROE COX,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Big Stone Gap.  Michael F. Urbanski, Chief District Judge.  (2:16-cr-00003-MFU-PMS-1)

Argued:  March 21, 2018                                           Decided:  May 11, 2018

Before GREGORY, Chief Judge, and DIAZ and HARRIS, Circuit Judges.

Vacated and remanded by unpublished opinion.  Judge Harris wrote the opinion, in which Chief Judge Gregory and Judge Diaz joined.

**ARGUED:**  Brian Jackson Beck, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Abingdon, Virginia, for Appellant.  Martha Suzanne Kerney-Quillen, OFFICE OF THE UNITED STATES ATTORNEY, Abingdon, Virginia, for Appellee.  **ON BRIEF:**  Larry W. Shelton, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Roanoke, Virginia, for Appellant.  Rick A. Mountcastle, Acting United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

James Monroe Cox challenges his 50-year prison sentence for five counts of mailing threatening letters to federal judges and prosecutors. Cox argues, in part, that his sentence is unreasonable because the district court failed to explain it adequately. We agree. Because the district court did not address Cox's nonfrivolous argument that his mental illness warranted a lower sentence, we vacate the sentence and remand for resentencing.

## I.

### A.

In 2013 and 2015, while serving a state prison sentence in Virginia, Cox wrote and mailed three graphic, disturbing letters. In the letters, Cox threatened to rape and kill judges and prosecutors in the Southern District of Texas, a judge in the Western District of Missouri, and judges in the Eastern District of Virginia. The government charged Cox with three violations of 18 U.S.C. § 876(c), prohibiting the communication through the Postal Service of a threat to kidnap or injure any person. Section 876(c) authorizes a sentence of up to ten years in prison for communications addressed to certain federal officials, including judges and law enforcement officers.

After his indictment, Cox moved for a competency evaluation, which the government did not oppose. The Bureau of Prisons (BOP) psychologist noted Cox's history of disruptive and self-mutilating behavior and diagnosed him with borderline personality disorder and antisocial personality disorder. The psychologist also concluded

that Cox was competent to stand trial and criminally responsible for his behavior at the time of the charged offenses. The magistrate judge found Cox competent, entered a plea of not guilty, and set a trial date.

Before the case could proceed further, however, the government superseded the indictment and charged Cox with two additional violations of 18 U.S.C. § 876(c). Cox had mailed two more letters, this time threatening to kill the presiding district court judge. Cox's case was reassigned to the current district court judge, who referred the case to the magistrate judge to take Cox's guilty plea on the superseding indictment.

During the plea colloquy, the magistrate judge asked Cox about his history of mental illness, institutionalization, and self-harm. Cox explained that he had been in and out of treatment facilities, residential programs, group homes, and civil commitments in state mental institutions since age ten, had been diagnosed with a variety of mental disorders, and had a history of self-harm. The magistrate judge ultimately accepted Cox's guilty plea and set a date for sentencing by the district court.

After Cox went on a hunger strike in jail, the district court expedited Cox's sentencing. But at the sentencing hearing, Cox moved to withdraw his guilty plea, claiming he did not remember entering it and did not remember the events giving rise to the charges in the superseding indictment. Citing Cox's demeanor and statements at the hearing and his recent behavior in jail, the district court allowed Cox to withdraw his plea and granted Cox's request for a second competency evaluation.

The results of the second competency evaluation were the same as the first. BOP's psychologist diagnosed Cox with borderline personality disorder and antisocial

4

personality disorder, but found him competent to stand trial and criminally responsible for his behavior at the time of the charged offenses. After another competency and guilty plea hearing, the district court found Cox competent and accepted Cox's guilty plea to all five counts in the superseding indictment. The court then proceeded to the sentencing at issue here.

**B.**

At Cox's sentencing hearing, the district court accepted the presentence report (PSR) prepared by the U.S. Probation Office. Instead of applying the Sentencing Guidelines provision for "threatening or harassing communications," U.S.S.G. § 2A6.1, and despite the fact that Cox's communications had not involved extortion, the PSR relied on the guideline for "extortion by force or threat of injury or serious damage," U.S.S.G. § 2B3.2, to calculate Cox's base offense level. Under that provision, and combined with Cox's criminal history score, the PSR arrived at a Guidelines range of 100 to 125 months for all five of Cox's § 876(c) violations. Neither the government nor Cox raised any objection to that Guidelines calculation.

Instead, Cox argued at the hearing for a sentence of fewer than 100 months – below the bottom of the Guidelines range – based in part on his mental illness. Specifically, Cox's lawyer asked the court to "consider that Mr. Cox has suffered from mental illness most of his life," and to view his threatening letters as "simply a cry for help." J.A. 188. Cox had "not received appropriate treatment while in custody in [Virginia]," his lawyer explained, and had been "housed in a solitary cell" for 23 hours a day. *Id.* When Cox mailed the threatening letters, "he had no ability whatsoever to act"

5

on the threats; instead, his lawyer argued, he was "an attention seeker" who was "asking for help . . . in a negative fashion." J.A. 189.

The government asked for a sentence of 125 months, the top of the Guidelines range. In response to Cox's arguments regarding mental health, the government acknowledged that the BOP's psychological evaluations "[c]learly" showed that "Mr. Cox needs treatment," and agreed "he may be crying for help." J.A. 195. It emphasized, however, that Cox "appreciates the nature of what it is he is doing," and argued that his escalating criminal behavior and risk of recidivism posed a serious threat to the public. *Id.*

Then, Cox addressed the court. Cox told the court that he meant what he wrote and planned to kill people when he was released from prison: "What I wrote in those letters, I do mean. And when I get out, I will, I will kill these people. That's a promise; I will get out and try to kill these people. That's the honest, that's the honest to God truth." J.A. 197. Cox went on, "I need some kind of help, some kind of counseling or something, just somebody I can talk to," "somebody that could understand what's going through my mind, you know, I mean, psychologically, I mean." J.A. 199.

The district court thanked Cox for his "candor." J.A. 200. Noting Cox's extensive criminal history, the ineffectiveness of prior periods of incarceration, and the need to protect the public, the court determined that it had "no choice" but to sentence Cox to the ten-year maximum on each count, to run consecutively, for a total of 50 years in prison. *See* J.A. 201–04. This appeal followed.

Cox challenges both the procedural and substantive reasonableness of his sentence, which we review for abuse of discretion. *United States v. Howard*, 773 F.3d 519, 527–28 (4th Cir. 2014).

We begin with procedural reasonableness. In reviewing Cox's sentence, we "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007). Cox argues that the district court committed exactly this kind of procedural error when it used the wrong Guidelines provision to calculate a base offense level of 18. According to Cox, his PSR, adopted by the district court, incorrectly relied on § 2B3.2 of the Sentencing Guidelines, which covers extortionate threats; instead, his offense level should have been determined under § 2A6.1, which covers threatening communications more generally. And under § 2A6.1, Cox explains, his base offense level would have been 12 rather than 18, leading to a significantly lower Guidelines range than the 100 to 125 months calculated by the district court.

The government concedes that Cox's base offense level was determined using the wrong Guidelines provision, that the proper base offense level for Cox's violations was 12 instead of 18, and that this error may well have led to an improperly inflated Guidelines range. But because Cox failed to object to application of the extortion guideline at sentencing, the government reminds us, our review is for plain error only, requiring Cox to establish that any mistake "affect[ed his] substantial rights." *United States v. Lynn*, 592 F.3d 572, 576–77 (4th Cir. 2010). According to the government, Cox

cannot meet this standard: Because the court made clear that it would impose the 50-year statutory maximum regardless of the Guidelines range, an error in that range could have had no effect on Cox's sentence. Cox disagrees, arguing that application of § 2A6.1, the correct Guidelines provision, would have pointed the district court to Guidelines commentary favorable to Cox that could have led to a lower sentence.

We need not resolve whether the unpreserved Guidelines error in this case affected Cox's substantial rights so as to allow for correction on plain-error review. As explained below, we find merit in Cox's second argument – that the district court erred in failing to adequately explain its sentence – and that alone is grounds for resentencing. On remand, the district court will have the opportunity to apply the correct Guidelines provision, obviating the need for any appellate remedy.

Although the Guidelines are "the starting point and the initial benchmark" of sentencing, they "are not the only consideration" when it comes to imposing a procedurally reasonable sentence. *Gall*, 552 U.S. at 49. The district court also "must adequately explain the chosen sentence." *Id.* at 50. That standard is met when the sentencing judge sets forth an explanation that "satisf[ies] the appellate court that [the judge] has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). An adequate explanation is not necessarily "lengthy." *United States v. Carter*, 564 F.3d 325, 330 (4th Cir. 2009). But in circumstances "'[w]here the defendant or prosecutor presents nonfrivolous reasons for imposing a different sentence' than that set forth in the advisory Guidelines," we have made clear that "a district judge should address the party's

8

arguments and 'explain why he has rejected those arguments.'" *Id.* at 328 (quoting *Rita*, 551 U.S. at 357).

In this case, Cox argued to the district court that his threatening letters should be viewed in the context of his untreated mental illness, warranting a below-Guidelines sentence. In light of his mental health issues, Cox's lawyer explained, the letters were best understood as attention-seeking behavior or a dysfunctional "cry for help," rather than true threats necessitating prolonged incapacitation. J.A. 188–89. The premise of that argument – that Cox had a history of mental illness and unsuccessful institutionalizations – was amply supported by the record. *See, e.g.*, J.A. 70–84 (first guilty plea colloquy); S.A. 218, 223–26 (first BOP psychological evaluation); S.A. 232–33 (second BOP psychological evaluation); J.A. 155 (government notifying court at sentencing that Cox's most recent self-harming behavior included swallowing phone battery and using phone case to cut himself). Indeed, the district court acknowledged as much, "specifically recommend[ing] to the Bureau of Prisons that [Cox] receive treatment for inmates with a principal diagnosis of borderline personality disorder" and expressing hope that Cox could receive "professional counseling and treatment" in prison. J.A. 202, 204. But the district court failed to do what *Carter* and cases like it require: explain why it was rejecting Cox's argument for a lower sentence in light of those mental health issues. *See Carter*, 564 F.3d at 328; *United States v. Blue*, 877 F.3d 513, 518–19 (4th Cir. 2017) (requiring adequate explanation when district court rejects nonfrivolous argument for different sentence).

The government does not dispute that Cox's untreated mental illness presented a nonfrivolous ground for imposition of a lighter sentence. Instead, it argues that the district court adequately explained its 50-year sentence as a whole, principally by describing Cox's extensive criminal history and emphasizing the need to protect the public. Under these circumstances, that is not enough.[1] Once Cox came forward with a nonfrivolous basis for a different sentence, it was incumbent on the district court to address that argument and explain why it found it unpersuasive. *See Carter*, 564 F.3d at 328. Nor, contrary to the government's suggestion, can this gap be filled by the district court's brief invocation of BOP's competency and sanity determinations. Cox's competence to stand trial and criminal responsibility for his actions are different questions, subject to different legal standards, than whether his mental illness is a mitigating factor warranting less time in prison. *See, e.g.*, *United States v. Bernard*, 708 F.3d 583, 593 (4th Cir. 2013) (mental illness is not equated with incompetence to stand trial); 18 U.S.C. § 17 (insanity is an affirmative defense to prosecution, not a sentencing factor).[2]

---

[1] And this is so notwithstanding the profoundly disturbing statements Cox made when addressing the court at sentencing.

[2] To the extent the government also suggests that Cox failed to preserve this issue at sentencing, necessitating application of plain-error review, we disagree. Cox argued before the district court for a sentence lower than the one imposed, and that is enough to preserve an objection to the adequacy of a sentencing explanation. *See United States v. Lynn*, 592 F.3d 572, 578–79 (4th Cir. 2010).

When a district court rejects a nonfrivolous argument for a lower sentence, "it must explain why in a sufficiently detailed manner to allow this Court to conduct a meaningful appellate review." *Blue*, 877 F.3d at 519. The record here does not permit us to assume that the district court considered Cox's argument based on mental illness, or to review its reasons for rejecting that argument. Accordingly, we vacate Cox's sentence as procedurally unreasonable and remand for resentencing. *See id.* at 521–22.[3] On remand, consistent with this opinion, the district court should apply U.S.S.G. § 2A6.1 and its commentary in calculating Cox's base offense level and Guidelines range. And whether it imposes a sentence above, below, or within the correct Guidelines range, the district court should address any nonfrivolous argument, by either party, for a sentence outside that range. *Id.* at 519.

## III.

For the foregoing reasons, we vacate Cox's sentence and remand for resentencing.

*VACATED AND REMANDED*

---

[3] Having concluded that Cox's sentence is procedurally unreasonable, we do not review the sentence for substantive reasonableness. *United States v. Blue*, 877 F.3d 513, 522 (4th Cir. 2017). Nor need we address Cox's additional arguments regarding the procedural reasonableness of his sentence.