UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-4435

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

PHILIP BERNARD FRIEND,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. Henry E. Hudson, Senior District Judge. (3:99-cr-00201-HEH-RCY-4)

Argued: October 31, 2018                          Decided: November 30, 2018

Before WILKINSON, FLOYD, and RICHARDSON, Circuit Judges.

Vacated and remanded by unpublished per curiam opinion.

**ARGUED:** Nia Ayanna Vidal, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Richmond, Virginia, for Appellant. Richard Daniel Cooke, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** Geremy C. Kamens, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Dana J. Boente, United States Attorney, Alexandria, Virginia, Brian R. Hood, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellant objects to a 65-year sentence imposed for crimes committed when he was a minor on the grounds that it was procedurally and substantively unreasonable under Supreme Court precedent governing the sentencing of minors. Because we agree that the district court should have responded in more detail to appellant's sentencing arguments we vacate and remand for further proceedings on that point. Accordingly, we do not reach issues of substantive reasonableness. [*]

I.

The relevant facts are undisputed. Philip Friend, at the age of 15, participated in a string of three actual or attempted hijackings under the direction of his two older brothers—Eugene, 27, and Travis, 19—and his mother, Vallia. According to Philip's aunt, since the death of their father, and their mother's subsequent bouts of depression, Eugene and Travis had assumed de facto leadership of the family. Philip looked up to them and wanted to please them as he would a father figure. When Eugene formulated a plan for his family to steal shipments of logs and sell them to lumber mills, Philip went along.

---

[*] Appellant also contends that the district judge should have recused himself because the judge had been approached by the Attorney General and other DOJ officials in connection with becoming the Director of the FBI. We think there was no reason for the judge to recuse himself under these circumstances. He was not seeking employment or a promotion; the Attorney General approached him, not the other way around. Moreover, the judge withdrew himself from consideration for the position some three weeks prior to defendant's sentencing.

The first attempted hijacking took place on March 1, 1999. Eugene physically assaulted Soren Cornforth in the cab of his parked truck. Philip participated, but Eugene was the primary aggressor. Cornforth put up more of a fight than expected, and Eugene ordered Travis to shoot him, which he did. Fearful that the noise might draw attention, the family fled without stealing the truck.

The second hijacking took place on April 10, 1999. While their mother distracted John Cummings, Eugene and Philip assaulted him. Philip then tied him up with duct tape, covering his mouth and nose. Eugene drove Cummings' truck for six hours while Philip kicked, punched, and hit Cummings with a BB gun. He told Cummings he could kill him by freezing him in the refrigerator unit in Cummings' trailer. After Eugene sold the contents of the truck, Philip and Eugene loosened the duct tape binding their victim and left him in the cab with a note telling him where to find his now empty trailer.

The third carjacking took place on April 25, 1999. Eugene, Travis, Philip, and an associate of the family, attacked Sam Lam at a truck stop while Vallia Friend distracted him. Eugene knocked Lam unconscious. Again, Philip bound Lam with duct tape, this time using a pillow case to cover the victim's head. As Eugene drove the truck to a secluded area, Philip kicked and beat Lam. Once they reached the secluded area, Eugene and Travis killed Lam.

Philip was arrested for participating in the latter two carjackings. He was charged as an adult and, in October 2000, was sentenced to life in prison after pleading guilty to carjacking resulting in death, in violation of 18 U.S.C. § 2119(3). At the time of this

4

initial sentencing, appellant's counsel moved for a downward departure based on his age, his upbringing, and his role in the offense. The motion was denied.

In 2013, appellant filed a petition challenging the imposition of a life sentence under *Miller v. Alabama*, 567 U.S. 460 (2012). This court agreed with the government's concession that *Miller* was retroactive to cases on collateral review and, accordingly, vacated the district court's judgment and remanded the case for resentencing.

On remand, the government and the appellant both submitted sentencing positions, along with responses and replies. Appellant also submitted two expert reports: a psychological evaluation of appellant by Dr. Gillian Blair and a report on appellant's conduct in prison by Jack Donson, a former Bureau of Prisons official. The trial court scheduled a hearing.

Appellant began the hearing by presenting the testimony of Philip's aunt, Michelle Edmonds. Edmonds testified that, after the death of Philip's father, his mother wrestled with depression and his older brothers, Travis and Eugene, became the de facto heads of the household. Edmonds testified that, had Philip been raised in a different environment, he would not have been led down this violent path.

Appellant then presented testimony from Dr. Gillian Blair. A psychologist with experience evaluating individuals for *Miller* resentencing, Blair related that the human brain does not fully mature until age 25. She also testified as to the extreme instability in the Friend household, both before and after Philip's father's death. According to her testimony, Philip's father was an abusive alcoholic. Vallia suffered from depression and tried to commit suicide in Philip's presence. After his father died, his brother Eugene

5

became the "disciplinarian" of the family and behaved in the same abusive ways as the father. Despite this difficult upbringing, Blair testified that Philip had no emotional disturbance or psychological disorder.

Appellant then presented testimony from Jack Donson, an expert witness on matters pertaining to the Bureau of Prisons. Donson testified that, although young inmates are more likely to misbehave because of their susceptibility to peer pressure, Philip did not succumb to gang recruitment efforts. According to Donson, Philip had completed various vocational and therapeutic programs, had a work history that suggested he was trusted by prison officials, had a light disciplinary record, and gave a favorable impression when interviewed. Philip, Donson concluded, was "an exemplary model of rehabilitation."

The government called no witnesses, but members of the Cornforth and Lam families gave impact statements that described the pain that comes with the murder of a loved one. Starli Cornforth, wife of Soren, described the "rage and hate and anger and pain" she experienced as a result of her husband's murder. J.A. 549-50. Nicole Ann Martin, Cornforth's daughter, through tears lamented that Cornforth was just beginning to enjoy life as a grandfather to her three children when he was killed. J.A. 564-65. Finally, Felix Lam, Sam's son, told the court that the murder of his father was a "nightmare than still affects [the Lam Family] to this day." J.A. 584.

Both parties asked for sentences below the guidelines range, which is life in prison. The government requested a sentence of 60 years. The government requested this sentence because Philip participated in homicide, "the worst crime we do." J.A. 592. The

6

government also emphasized that the injuries sustained by John Cummings were severe—leading to a loss of livelihood—and, unlike the deaths of Lam and Cornforth, due largely to Philip's actions alone. *Id.* The defense requested a sentence of 35 years. In support of this request, the defense pointed out that Philip committed these offenses as the youngest member of a criminal family, at the age of 15. He was following the commands of his mother and his older brothers who had taken on father-figure roles. The defense argued it would have been extremely difficult for Philip to extricate himself from these circumstances.

After hearing this testimony, the judge explained the sentence he was about to impose. He explained that the sentencing guidelines were advisory. He explained that the factors listed in 18 U.S.C. § 3553(a) had been addressed by counsel. He explained that life without parole would be an unconstitutional sentence. And he explained that, in his view, the brutality and torture visited on the victims by the appellant required a "significant penalty," despite his "tough upbringing." J.A. 601-03. Philip may not have "killed [Lam and Cornforth] with [his] own hands," but he was a "brutal participant in the death of these individuals." *Id.* Accordingly, the court imposed a sentence of 65 years, reasoning that this sentence would "promote respect for the rule of law, provide for deterrence and be a just punishment." *Id.*

Philip appealed.

## II.

In many respects, the district court conducted the resentencing hearing admirably. It treated the guidelines as advisory only, and allowed both parties to put on all the

7

evidence they needed to make their arguments for a variance. It remained engaged through the presentation of the evidence, and kept in mind the relevant Supreme Court guidance on the resentencing of minors.

Our precedent is clear that, when explaining a sentence, the judge is not required to tick through every factor listed in 18 U.S.C. § 3553(a). *United States v. Carter*, 564 F.3d 325, 329 (4th Cir. 2009). Nor is the sentencing judge required to catalogue and repeat every argument a defendant makes. *Pepper v. United States*, for example, held that sentencing courts *may*—but not *must*—consider a defendant's post-sentencing rehabilitation in a resentencing like the one here. 562 U.S. 476, 481 (2011). But the court must address itself to non-frivolous arguments. *Rita v. United States*, 551 U.S. 338, 356 (2007); *United States v. Blue*, 877 F.3d 513, 519 (4th Cir. 2017).

The appellant is correct that the trial court's statement explaining its sentence did not adequately address the fact that Philip was 15 years old when he committed the offenses, that he would have had trouble getting away from the influence of his family, and that, consequently, he was less blameworthy than his older brothers who came up with this criminal scheme and committed the killings. This is not to say that the court erred when it took into account the terribly brutal nature of the crimes that were committed with appellant's undeniable participation. But it should have been clearer about how it weighed this latter factor against the former.

We do not need to address the substantive reasonableness of the sentence imposed. We instead leave the imposition of a sentence to the able offices of the district court upon

8

remand, after the court has had the opportunity to address appellant's arguments and explicitly weigh them against the admitted gravity of the various offenses.

For the foregoing reasons, the judgment of the district court is

*VACATED* and *REMANDED.*