**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 20-4032**

UNITED STATES OF AMERICA,

Plaintiff − Appellee,

v.

NAHSON JAHKEEM SUGGS, a/k/a Nas,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Greenville.  Terrence W. Boyle, District Judge.  (4:18−cr−00078−BO−2)

Argued:  September 24, 2021                    Decided:  February 2, 2022

Before DIAZ and RICHARDSON, Circuit Judges, and FLOYD, Senior Circuit Judge.

Affirmed by unpublished opinion.  Judge Diaz wrote the opinion, in which Judge Richardson joined, and in which Senior Judge Floyd joined in part.  Senior Judge Floyd wrote an opinion dissenting in part.

**ARGUED:**  James B. Craven, III, Durham, North Carolina, for Appellant.  Lucy Partain Brown, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:**  Robert J. Higdon, Jr., United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, David A. Bragdon, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

Nahson Suggs pleaded guilty to eight counts of drug trafficking and one count of possessing a firearm in furtherance of a drug-trafficking crime. The district court sentenced him to concurrent 63-month terms of imprisonment on the drug counts and a consecutive 60-month term on the firearm count. On appeal, defense counsel filed an *Anders* brief, questioning the reasonableness of the sentence and the denial of Suggs's objections to the presentence report. We directed merits briefing on two issues: (1) whether the court erred by failing to ask if Suggs agreed to the factual basis proffered by the government at his plea colloquy, and (2) whether the court failed to adequately explain its chosen sentence. We affirm.

I.

Suggs's convictions stem from an undercover investigation conducted by the Bureau of Alcohol, Tobacco, Firearms and Explosives. The investigation revealed that Suggs, along with two coconspirators, led a gang that trafficked drugs and guns. Throughout the investigation, Suggs brokered at least 15 sales of heroin, fentanyl, or guns. He made one such drug sale in front of a small child. In all, law enforcement found Suggs personally responsible for distributing over 180 grams of heroin, 15 grams of a heroin-fentanyl mixture, and 10 guns.

A grand jury indicted Suggs on nine counts: conspiracy to distribute and possess with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1), 846; six counts of distributing heroin, in violation of 21 U.S.C. § 841(a)(1); distributing heroin and fentanyl,

3

in violation of 21 U.S.C. § 841(a)(1); and possessing a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c).[1]

At the plea hearing, the district court found Suggs competent and explained the charges against him, their maximum penalties, and the rights Suggs would be relinquishing by pleading guilty. Having acknowledged the court's statements, Suggs pleaded guilty to all nine counts without a plea agreement. The government then presented the factual basis for the charges. And though Suggs hadn't stipulated to the facts, he didn't dispute them. The court then, without consulting Suggs or his counsel, found that the plea was voluntary and that a factual basis existed for Suggs's guilty plea.

Suggs's presentence report grouped the drug counts and calculated a total offense level of 26. It first computed a base offense level of 24 from the drug quantities. The report then applied a three-level increase for Suggs's role as a manager in the offense and a two-level increase for his knowing involvement of a minor. It also applied a three-level reduction for acceptance of responsibility. Coupled with his criminal history category of I, Suggs's Guidelines range on the drug counts was 63 to 78 months in prison. For the gun charge, the Guidelines sentence was the statutory minimum of 60 months, consecutive to any other counts. Suggs objected to the report's drug-weight calculation and both sentencing enhancements.

---

[1] Four of Suggs's counts for distributing heroin also charged aiding-and-abetting liability in violation of 18 U.S.C. § 2.

4

At sentencing, Suggs took responsibility for his actions. Suggs's counsel then reiterated his objections to the presentence report, arguing that a Guidelines range of 24 to 30 months should apply to the grouped drug charges. In response, the government called a detective who investigated Suggs's crimes. This detective corroborated Suggs's leadership role in the conspiracy, recruitment of Suggs's then 17-year-old brother for the drug sales, and distribution of the drug quantities described in the presentence report. Suggs presented no witnesses in rebuttal. The court overruled Suggs's objections.

Suggs's counsel then requested a downward variance from the 63- to 78-month Guidelines range on the drug charges. He explained Suggs was a young man with no prior felony convictions and "a lot of support in the community." J.A. 56. And because this would be Suggs's first stint in prison, counsel argued that a 24-month sentence on the drug charges, when combined with the consecutive 60-month term on the gun charge, would be adequate deterrence.

In response, the government emphasized Suggs's personal role in at least 15 different drug or gun transactions. It also noted that a small child was present during one of the heroin deals at Suggs's home. To close, the government discussed Suggs's involvement with local street gangs and asserted there had been a noticeable drop in violent crime in the area following the arrest of Suggs and his coconspirators.

After hearing the evidence—and criticizing some errors in the presentence report— the district court held that "under [18 U.S.C. §] 3553(a) the Government has satisfied their burden of proof and a sentence within the guideline at the low end is appropriate in this

case." J.A. 59. The court sentenced Suggs to concurrent 63-month prison terms on the drug counts and a consecutive 60-month term on the gun count.

Suggs timely appealed. His counsel filed a brief under *Anders v. California*, 386 U.S. 738 (1967), questioning the reasonableness of the sentence and the denial of Suggs's objections to the presentence report but finding no meritorious grounds for appeal. In accordance with *Anders*, we reviewed the record and directed the parties to brief the issues now before us.

## II.

### A.

We first address Suggs's plea proceeding. Suggs didn't challenge the district court's acceptance of the proffered factual basis at his plea colloquy, nor did he move to withdraw his guilty plea. As a result, we review the adequacy of his plea proceeding for plain error. *United States v. Lockhart*, 947 F.3d 187, 191 (4th Cir. 2020) (en banc).

To satisfy the plain-error standard, Suggs must show: (1) an error was made; (2) the error is plain; and (3) the error affected his substantial rights. *United States v. Massenburg*, 564 F.3d 337, 342–43 (4th Cir. 2009). In the guilty-plea context, Suggs can prove that an error affected his substantial rights if he shows "a reasonable probability that, but for the error, he would not have pleaded guilty." *United States v. Sanya*, 774 F.3d 812, 816 (4th Cir. 2014) (cleaned up). We will exercise our discretion to correct such an error only if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Lockhart*, 947 F.3d at 191 (cleaned up).

Federal Rule of Criminal Procedure 11 requires district courts to determine that there's a factual basis for a guilty plea before entering judgment. Fed. R. Crim. P. 11(b)(3). "The requirement . . . is designed to protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge." *United States v. Mastrapa*, 509 F.3d 652, 660 (4th Cir. 2007) (cleaned up).

Here, the district court heard a detailed proffer from the government and adopted this factual basis for the plea without affording Suggs a chance to agree, much less respond. This is troubling considering Suggs pleaded guilty with no plea agreement or stipulated statement of facts. And there's little else in the record to assure us the court made clear Suggs knew exactly what he admitted to when the court accepted the government's proffer.

But even if we assume the first two elements of the plain-error standard are met, Suggs has failed to show a reasonable probability that, but for the district court's failure to question him about the factual proffer, he wouldn't have pleaded guilty. To the contrary, Suggs concedes that, if the district court had questioned him about the proffer, he "would likely have agreed to it." Appellant's Supp. Br. at 4. Even now, he assures us he's "not seeking to withdraw the guilty plea." Reply Br. at 1. What's more, the presentence report described the factual basis offered by the government at the plea hearing. Suggs had a chance to object to those facts (and did object to some) before his sentencing. On this record, Suggs can't show that any error during his plea proceeding affected his substantial rights.

7

B.

Suggs next challenges his sentence as procedurally unreasonable because the district court failed to adequately explain its low-end Guidelines sentence.

We review a district court's sentence "under a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007). In reviewing for procedural reasonableness, we "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Id.* at 51.

A sentencing judge "should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). Of course, the "appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances." *Id.* For this reason, "[w]hen a judge applies a sentence within the Guidelines range, he or she often does not need to provide a lengthy explanation." *Chavez-Meza v. United States*, 138 S. Ct. 1959, 1964 (2018). It can be sufficient for a judge to simply rely on the record, while making clear that he or she has considered the parties' arguments and accounted for the § 3553(a) factors. *See id.* at 1965.

In this case, Suggs argued for a downward variance, requesting a 24-month sentence on the drug charges rather than one in the 63- to 78-month Guidelines range. The government responded, reasserting the propriety of a Guidelines sentence. Despite having

these competing contentions before it, the court's ruling was terse. There's no doubt the court could have provided a more robust explanation for its Guidelines sentence. But the question before us is whether a longer explanation was required here. We conclude it was not.

Though Suggs advanced a few mitigation arguments, they weren't so complex as to require a detailed explanation. Counsel argued Suggs was a young man with no felonies and an otherwise clean criminal record. He also stressed Suggs's considerable community support. On this basis, counsel suggested that a variant sentence on the drug counts more than 50 percent below the low-end of the Guidelines range would have provided adequate deterrence. While nonfrivolous, these arguments are "conceptually simple," such that the law didn't require the district court to say much when "the record makes clear [it] considered the evidence and arguments." *Rita*, 551 U.S. at 359. The court's explanation here meets this low bar, though barely. [2]

After hearing argument on Suggs's requested variance, the district court found that "under 3553(a) the Government ha[d] satisfied their burden of proof and a sentence within

_____

[2] While we have great respect for the work of our district court colleagues (and are loath to criticize them), this is not the first time we've addressed this district court's truncated sentencing practices. *See, e.g.*, *United States v. Lymas*, 781 F.3d 106, 113–14 (4th Cir. 2015); *United States v. Carter*, 564 F.3d 325, 329–30 (4th Cir. 2009); *United States v. Pratt*, 796 F. App'x 181, 182–83 (4th Cir. 2020) (per curiam); *United States v. Hines*, 796 F. App'x 803, 806–07 (4th Cir. 2019) (per curiam); *United States v. Johnson*, 694 F. App'x 192, 193 (4th Cir. 2017) (per curiam); *United States v. Gaskill*, 318 F. App'x 251, 259 (4th Cir. 2009) (per curiam). In each of these cases, we vacated and remanded for resentencing because of the court's failure to adequately explain its chosen sentence. While we find that remedy inappropriate here, we urge our colleagues to do more than the bare minimum when exercising their sentencing power.

the guideline at the low-end is appropriate in this case." J.A. 59. The court thus incorporated the § 3553(a) factors into its decision and signaled that it had rejected Suggs's contentions on these factors in favor of the government's. To be sure, the government has no "burden" under § 3553(a), but the import of the court's inartful language is sufficiently clear. After all, the court then immediately imposed a 63-month Guidelines sentence on the drug charges, as the government requested. This sentence was a far cry from Suggs's requested 24 months.

Moreover, that the district court adopted the government's position is significant because the government directly addressed Suggs's mitigation arguments. *Cf. United States v. Torres-Reyes*, 952 F.3d 147, 153 (4th Cir. 2020) (finding a sentence inadequately explained despite the government addressing the mitigation arguments because "the court did not adopt or convey the weight it placed on [the government's] arguments").[3] In response to Suggs's "clean" criminal history, the government explained this wasn't one bad decision—he participated in over 15 felony drug or gun transactions. As for his community support, the government highlighted both the presence of a small child in one of Suggs's heroin deals and the crime reduction in his community since his arrest. We find

---

[3] In criticizing our reliance on *Torres-Reyes*, *see* Dissenting Op. at 15–16, our friend in the dissent goes beyond what that case requires. There, we found the district court failed to "describe the circumstances or characteristics present" that would outweigh the defendant's mitigation arguments. *Torres-Reyes*, 952 F.3d at 153. Although the government had addressed the defendant's arguments, the district court failed to *either* "adopt *or* convey the weight it placed on those arguments." *Id.* (emphasis added). That the district court here didn't specifically convey the weight it gave the government's arguments is of no moment for we find the record shows it adopted those arguments wholesale.

that "the context of [Suggs's] sentence makes it patently obvious that the district court found [his] arguments to be unpersuasive." *United States v. Blue*, 877 F.3d 513, 521 (4th Cir. 2017) (cleaned up).

Our dissenting colleague suggests that we've improperly employed the sentencing hearing's context as a "surrogate" for the district court's required statement of reasons. Dissenting Op. at 16–17. Our friend says that context can *usually* reveal only that a court considered a defendant's arguments, not its reasons for dismissing them. With this much, we agree. But a court's adoption (however brief) of the government's position is not the usual course of things.

There's no gainsaying that a sentencing court's separate consideration of and explanation for dismissing a defendant's mitigation arguments is the better practice. But our cases—contrary to the dissent's view, *see* Dissenting Op. at 15—permit a court to consider a defendant's arguments and reject them through adoption of the government's responsive arguments. *See, e.g.*, *Torres-Reyes*, 952 F.3d at 153; *United States v. Quiller*, 494 F. App'x 308, 311 (4th Cir. 2012) (per curiam) ("We have reviewed the sentencing transcript and the district court's statement of reasons and conclude that the court considered the arguments raised by the parties and adopted the Government's position as acceptable. In so doing, the court acknowledged its inclination to sentence Quiller to the high end of the Guidelines and yet sentenced Quiller to the middle of the sentencing range, consistent with the Government's request."); *United States v. Jones*, 417 F. App'x 337, 339 (4th Cir. 2011) (per curiam) ("After review of the record, we are satisfied that the court adequately explained its rejection of Jones' argument when it adopted the government's

11

position[.]"). This sequence of events will often implicate a hearing's context, and that's what happened here.

The district court's actions throughout sentencing further persuade us that it engaged with and considered the parties' arguments and the relevant facts. *See United States v. Montes-Pineda*, 445 F.3d 375, 381 (4th Cir. 2006) ("This is not a case where the district court passively heard the parties' arguments and then seemed to ignore them."). At the beginning of the proceeding, the court gave Suggs a chance to speak and thanked him for his allocution. When the government presented a witness, the court had questions of its own to "set the stage." J.A. 50. And at a few points, the court identified errors it found in the presentence report. In short, the record shows that the district court made an individualized assessment of the chosen sentence based on the particular facts and arguments before it. *See Blue*, 877 F.3d at 518.

Finally, Suggs insists that *United States v. Provance*, 944 F.3d 213 (4th Cir. 2019), mandates resentencing. In *Provance*, we vacated a below-Guidelines sentence as procedurally unreasonable where "there was no explanation at all." *Id.* at 219. The district court there deviated from the Guidelines range of 33 to 41 months' imprisonment to instead impose a sentence of probation. *See id.* at 216–17. But in doing so, it failed to mention the § 3553(a) factors or provide any other basis to infer its rationale for rejecting the government's arguments for a Guidelines sentence. *See id.* at 219.

*Provance* is of no help to Suggs. For starters, the district court here (unlike in *Provance*) imposed a Guidelines sentence. This sentence thus requires less explanation than one that deviates from the Guidelines. *See Chavez-Meza*, 138 S. Ct. at 1964. And, as

12

discussed, the court's explanation, while limited, gives us a sufficient basis to conclude that it considered the § 3553(a) factors and weighed the merits of Suggs's mitigation arguments. That the court found a Guidelines sentence appropriate under the particularized facts of Suggs's case is also borne out by the context and record of the sentencing hearing.

III.

For the reasons given, the district court's judgment is

*AFFIRMED.*

FLOYD, Senior Circuit Judge, concurring in part and dissenting in part:

The Court holds today that a sentencing judge provides sufficient explanation when, without considering a single argument raised in defense, the judge announces "the Government has satisfied [its] burden of proof" "under 3553(a)." J.A. 59. Because that holding trivializes beyond recognition the foundational legal principle that a district judge "should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority," *Rita v. United States*, 551 U.S. 338, 356 (2007), I respectfully dissent from Part II.B of the majority opinion. I concur with the remaining Parts of the opinion.

The majority begins with *Rita*'s remark that rejecting "conceptually simple" arguments does not always require "a detailed explanation." Majority Op. 9 (quoting 551 U.S. at 359).* Extending that proposition, the majority now holds that in some circumstances, the analysis is so simple that a district court may implicitly incorporate the

---

* The majority similarly relies on *Chavez-Meza*'s proposition that the district court "does not need to provide a lengthy explanation" for sentences within the Guidelines range. *Chavez-Meza v. United States*, 138 S. Ct. 1959, 1964 (2018). But *Chavez-Meza* also cautioned, just one page before, that "[i]f the sentence is within the Guidelines range, and the Guidelines range exceeds 24 months, the judge must also state 'the reason for imposing a sentence at a particular point within the range.'" *Id.* at 1963 (quoting 18 U.S.C. § 3553(c)(1)). And it affirmed the district court's resentencing only after verifying that the judge had previously explained, at the original sentencing, that the "reason the guideline sentence is high in this case . . . is because of the drug quantity"—"from what he gathered and what he had seen, methamphetamine, it destroys individual lives, it destroys families, it can destroy communities." *Id.* at 1966–67 (brackets omitted). That explanation offered insight into the district court's judgment and an opportunity to contest it by, for example, arguing the district judge inappropriately relied on his own experience rather than the record. The majority can point to no comparable explanation—and thus no comparable opportunity—here.

14

government's objections into its sentencing, "signal[ing]" that it supports the government's position, *id.* at 10—without offering any reasons of its own. But the majority cites no authority for that further step. Quite the contrary: *Rita* holds a "statement of reasons" "important" "[i]n the [sentencing] context." 551 U.S. at 356. It allows for "normal appellate" review of potential substantive mistakes, *id.* at 354, and promotes the legitimacy of the sentencing system, *id.* at 367 (Ginsburg, J., concurring). And where, as here, a defendant actually "contests the Guidelines sentence," *Rita* expressly directs the trial court to say "more"—to address the "nonfrivolous reasons for imposing a different sentence." *Id.* at 357. Even if we could sanction the district court's tacit incorporation of a certain specific proposition advanced by the prosecution, we certainly cannot do so wholesale. Take the district court's broad statement here, that "the Government ha[d] satisfied their burden of proof." J.A. 59. I fail to see what reasoned principle we can apply to "determine from this record if the court found some, all, or none" of the government's contentions persuasive. *United States v. Carter*, 564 F.3d 325, 329 (4th Cir. 2009).

The majority cites a case we decided just last year, *Torres-Reyes*, which held a sentence procedurally inadequate because the district court neither "describe[d] the circumstances or characteristics present that, in its opinion, would outweigh the circumstances that the defendant argued justified a variance" nor "adopt[ed]" the government's arguments. *United States v. Torres-Reyes*, 952 F.3d 147, 153 (4th Cir. 2020). This case, the majority presumably reasons, requires the opposite result because the district court indeed "adopt[ed]" the government's contentions below. *Id.* Yet *Torres-Reyes* would still require the court to "convey the weight it placed on [the government's]

15

arguments." *Id.* That the court did not do so here is particularly troubling because all Suggs's crimes comprised controlled buys. J.A. 52–53. So the government's argument that violence in the community decreased following Suggs's arrest—as the district court's incorporation of that argument—cannot respond to Suggs's nonfrivolous contentions about his deep community support and lack of prior criminality. The district court "needed to separately consider these arguments for a variance." *Torres-Reyes*, 952 F.3d at 152.

The majority also insists that a hearing's "context" can offer a surrogate for an explicit statement of reasons—at least where the context "makes it patently obvious that the district court found [the defendant's] arguments to be unpersuasive." Majority Op. 10–11 (quoting *United States v. Blue*, 877 F.3d 513, 521 (4th Cir. 2017)). That is true where "the sentence imposed is explicitly tailored to address a defendant's individual characteristics, such as requiring substance abuse treatment for defendants who struggle with drug and alcohol abuse issues." *Blue*, 877 F.3d at 521 (citation omitted). Or where "the sentencing court engages counsel in a discussion about [a specific] argument." *Id.* (citation omitted). The record here manifests neither. The district court (1) thanked Suggs for his allocution, (2) asked two rudimentary, "set[ting] the stage" questions of the government, Majority Op. 12, and (3) corrected a typo in the presentence report. None of those comments engaged with *Suggs's* arguments for a downward departure: a clean criminal history, deep community support, his youth, his inexperience with prison conditions, and a mandatory consecutive 60-month sentence. *Cf. Rita*, 551 U.S. at 345 (underscoring that the district court "asked questions about each [§ 3553(a)] factor"). If anything, the context here shows the district court was *un*willing to consider Suggs's

16

defenses. When Suggs's attorney raised sound objections to the Guidelines calculations, for example, the court remarked, "You got a lot of objections, don't you?" J.A. at 43. And while waiting on a government witness's testimony, the judge asked the defense, "Do you really want to educate me about your guy?" *Id.* at 44. I cannot agree with the majority that this kind of "engage[ment]" offers confidence "that the district court made an individualized assessment . . . based on the particular facts and arguments before it." Majority Op. 12.

Even more to the point, the hearing's context usually reveals only that the court *considered* a defendant's arguments, not the court's *reasons* for dismissing them. Those remain two separate requirements. *See Carter*, 564 F.3d at 328. That is why we were careful in *Blue* to cabin our reliance on context only where the sentence on its face responds to some discrete contention raised during the hearing. *See supra* p. 16; *see also Blue*, 877 F.3d at 521 (remanding for resentencing where "the district court did not engage counsel in a discussion about the merits of [a defendant's] arguments for a downward departure" because "simply hear[ing] those arguments" does not make the sentencing decision "patently obvious" (quoting *United States v. Montes-Pineda*, 445 F.3d 375, 381 (4th Cir. 2006))). At all other times, we have resolutely declined to "guess at the district court's rationale, searching the record for statements by the Government or defense counsel or for any other clues that might explain a sentence." *Torres-Reyes*, 952 F.3d at 151 (quoting *United States v. Ross*, 912 F.3d 740, 745 (4th Cir. 2019); *Carter*, 564 F.3d at 329–30). Here, the majority offers as proof only that the district court "imposed a 63-month

17

Guidelines sentence on the drug charges, as the government requested." Majority Op. 10. That falls far short of *Blue*.

The majority ends by stressing that within-the-Guidelines sentences require less explanation. Majority Op. 12 (declining to follow *United States v. Provance*, 944 F.3d 213 (4th Cir. 2019), because the court there "deviated from the Guidelines range"). But less is not nothing. *Rita*'s central holding was that "the sentencing court"—unlike its appellate counterpart—"does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." 551 U.S. at 351 (citation omitted). Requiring trial judges to turn square corners is what keeps "the rebuttability of the presumption" "real." *See id.* at 367 (Ginsburg, J., concurring). And absent such adequate explanation, appellate courts will be forced to presume the Guidelines not just reasonable but binding—exactly what we may not do after *Rita* and *United States v. Booker,* 543 U.S. 220 (2005). What is more, this Circuit's precedent already holds as much: "the Supreme Court's recent sentencing jurisprudence plainly precludes any presumption that, when imposing a sentence, the district court has silently adopted arguments presented by a party." *Carter*, 564 F.3d at 329 (discussing *Rita*, 551 U.S. 338; *Booker,* 543 U.S. 220; *Gall v. United States*, 552 U.S. 38 (2007)). "[S]entences that fall within the Guidelines range are entitled" only "to a presumption of substantive reasonableness, we typically do not apply that presumption to the procedural prong of our reasonableness inquiry." *Blue*, 877 F.3d at 519–20 (citations omitted). To satisfy *that* prong, the sentencing court must "state the individualized reasons that justify a sentence, even when sentencing a defendant withing the Guidelines range."

18

*Carter*, 564 F.3d at 330 n.2 (citations omitted).  After today, that jurisprudence takes on a previously unsuspected modesty.

I would hold that the district court procedurally erred in failing to address Suggs's nonfrivolous arguments for a downward departure and remand for resentencing.